2005 UT 34

**STATE of Utah, Plaintiff and Appellee,**

v.

**Scott Joseph MERRILL, Defendant and Appellant.**

No. 20020877.

Supreme Court of Utah.

June 10, 2005.

Mark L. Shurtleff, Att'y Gen., Karen A. Klucznik, Asst. Att'y Gen., Salt Lake City, David A. Blackwell, W. Brent Langston, Castle Dale, for plaintiff.

Stephen R. McCaughey, Salt Lake City, for defendant.

NEHRING, Justice:

¶ 1 This case presents the questions of whether Utah Code section 77–13–6(2)(b) creates a jurisdictional bar to a criminal defendant's withdrawal of a guilty plea, and whether the thirty-day limitation in which a plea must be withdrawn is unconstitutional. We hold that the bar is jurisdictional and constitutionally permissible.

## BACKGROUND

¶ 2 On October 29, 1998, Scott Joseph Merrill hid among rocks overlooking a road upon which Charles Watterson, an employee of Emery County, was operating a road grader. When Mr. Watterson approached Mr. Merrill's location, Mr. Merrill approached the grader and repeatedly shot Mr. Watterson, killing him. Mr. Merrill then took Mr. Watterson's belongings and left the scene.

¶ 3 Law enforcement officials found thirty-five spent .22 caliber casings in the area of the killing. A firearms expert determined that the casings were from a Ruger 10.22 semiautomatic weapon owned by Mr. Merrill. Investigators also found footprints around Mr. Watterson's vehicle that were consistent with the tread pattern of Mr. Merrill's boots.

¶ 4 The Emery County Sheriff's Office uncovered a camp between Green River and the crime scene where some of Mr. Merrill's personal belongings were found. Further investigation revealed that Mr. Merrill had arrived in Green River via an eastbound Amtrak train and spent a few nights camping in the desert. After shooting Mr. Watterson, Mr. Merrill proceeded to a Green River motel where he was discovered and taken into custody.

¶ 5 Mr. Merrill was initially charged with aggravated murder, aggravated robbery, and criminal mischief, each of which was accompanied by a firearm enhancement. On February 17, 2000, Mr. Merrill pleaded "no contest" to the charge of aggravated murder. In exchange for Mr. Merrill's plea, the State agreed to dismiss the charges of aggravated robbery and criminal mischief, together with all three firearm enhancements. The State further agreed not to seek the death penalty or the sentence of life in prison without parole and to recommend a life sentence with the possibility of parole.

¶ 6 In a "no contest" statement filed with the court as part of his plea entry, Mr. Merrill acknowledged that he intentionally shot and killed Mr. Watterson and took personal property from him. Mr. Merrill indicated that he acted on a commandment from God to kill Mr. Watterson, believing this commandment to supersede Utah law. Mr. Merrill also informed the court that he believed he was mentally competent to enter his plea and that, although he was taking the prescription drug Zoloft at the time, the medicine did not prevent him from knowingly, intelligently, and voluntarily entering the plea.

¶ 7 Mr. Merrill was informed by the court that he had thirty days after the date of disposition to move to withdraw the plea. The district court then conducted a plea colloquy with Mr. Merrill and entered a plea of guilty to aggravated murder pursuant to Utah Code section 77–13–2(3).

¶ 8 Nancy Beth Cohn, Ph.D., performed a psychological assessment of Mr. Merrill. She concluded that Mr. Merrill was mentally ill, suffering from paranoid schizophrenia, possibly bipolar type. Dr. Cohn indicated that Mr. Merrill had been "floridly psychotic" prior to the crime. At the plea and sentenc-

ing hearing, Dr. Cohn testified that Mr. Merrill was competent to enter into the plea agreement because the "symptoms of his mental illness" were "in substantial remission."

¶ 9 In November 2000, Mr. Merrill filed a petition for post-conviction relief. As grounds for his petition, Mr. Merrill alleged ineffective assistance of counsel and that his psychiatric medicine, Zoloft, had caused him to experience religious delusions that resulted in his entering his plea without adequate comprehension of what he was doing.

¶ 10 The district court replaced Mr. Merrill's counsel, who, in April 2001, supplemented the post-conviction relief petition with a motion to withdraw Mr. Merrill's guilty plea. This motion was later amended to allege that Mr. Merrill had not knowingly or voluntarily entered the plea owing to the effects of his medicine.

¶ 11 Mr. Merrill's counsel attributed the significant lapse in time between the entry of Mr. Merrill's plea and his motion to withdraw it to Mr. Merrill's recent discovery of Zoloft's side effects. Relying on Utah Code section 77–13–6(2)(b), which states that all motions to withdraw a guilty plea must be filed within thirty days, Utah Code Ann. § 77–13–6(2)(b) (1999) (amended 2003 & 2004), the district court dismissed Mr. Merrill's motion to withdraw the plea as untimely and concluded that the motion's untimeliness left the court without jurisdiction to consider its merits. This appeal followed. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(i) (2004).

## STANDARD OF REVIEW

■ ¶ 12 We review the district court's interpretation of Utah Code section 77–13–6(2)(b) for correctness, affording no defer-

ence to its legal conclusions. *State v. Ostler,* 2001 UT 68, ¶ 5, 31 P.3d 528. ·

## ANALYSIS

### I. THE JURISDICTIONAL BAR

■ ¶ 13 Mr. Merrill argues that the plain language of the statute, its legislative history, and case law addressing similar statutes support the proposition that the time limit to withdraw a guilty plea imposed by Utah Code section 77–13–6(2)(b) is directory only, creating no jurisdictional bar to the consideration of his motion. At the time of Mr. Merrill's plea and motion to withdraw, section 77–13–6 read:

(1) A plea of not guilty may be withdrawn at any time prior to conviction.

(2) (a) A plea of guilty or no contest may be withdrawn only upon good cause shown and with leave of the court.

(b) A request to withdraw a plea of guilty or no contest is made by motion and shall be made within 30 days after the entry of the plea.

(3) This section does not restrict the rights of an imprisoned person under Rule 65B, Utah Rules of Civil Procedure.

Utah Code Ann. § 77–13–6 (1999) (amended 2003 & 2004).[1]

¶ 14 Although we have not unequivocally stated that the thirty-day filing requirement of section 77–13–6(2)(b) imposes a jurisdictional bar to late-filed requests to withdraw pleas, we have strongly implied as much.

¶ 15 We first addressed this issue in *State v. Abeyta,* 852 P.2d 993 (Utah 1993) (per curiam). Before the thirty-day limit to withdraw a guilty plea was added to Utah Code section 77–13–6, Mr. Abeyta pleaded guilty to aggravated robbery. *Id.* at 994; *see* Utah Code Ann. § 77–13–6 (1980). By the time

1. The amended statute, currently in force, reads:
   (1) A plea of not guilty may be withdrawn at any time prior to conviction.
   (2) (a) A plea of guilty or no contest may be withdrawn only upon leave of the court and a showing that it was not knowingly and voluntarily made.
   (b) A request to withdraw a plea of guilty or no contest, except for a plea held in abeyance, shall be made by motion before sentence is announced. Sentence may not be announced unless the motion is denied. For a plea held in abeyance, a motion to withdraw the plea shall be made within 30 days of pleading guilty or no contest.
   (c) Any challenge to a guilty plea not made within the time period specified in Subsection (2)(b) shall be pursued under Title 78, Chapter 35a, Post–Conviction Remedies Act, and Rule 65C, Utah Rules of Civil Procedure.
   Utah Code Ann. § 77–13–6 (Supp.2004).

Mr. Abeyta moved to withdraw his plea, the thirty-day time limit had been codified, *see* Utah Code Ann. § 77–13–6 (1989), and more than thirty days had passed from the date on which he entered his plea. *Abeyta*, 852 P.2d at 994. We concluded that the statutory amendment was substantive and not procedural and held that the thirty-day limit could not be applied retroactively to bar Mr. Abeyta's motion. *Id.* at 995. In so holding, we implied that a defendant's failure to withdraw a guilty plea within thirty days from the date on which he entered it would have jurisdictional consequences when we stated that "[t]he amendment to the plea statute limits a defendant's right to withdraw his or her guilty plea to thirty days after entry of the plea. Thereafter, the right is extinguished." *Id.*

¶ 16 Later, in *State v. Ostler*, 2001 UT 68, 31 P.3d 528, we acknowledged and resolved a statutory ambiguity concerning which procedural event triggered the thirty-day plea withdrawal window.[2] We held that the statutory description of the period available to withdraw a plea, "30 days after the entry of the plea," Utah Code Ann. § 77–13–6(2)(b) (1999), referred to the date of entry of final judgment and not to the date of the plea colloquy. *Ostler*, 2001 UT 68 at ¶ 11, 31 P.3d 528. The legislative history of the statute anchored most of this holding. *Id.* at ¶ 9. We reinforced our reasoning, however, with the observation that to start the time for moving to withdraw a plea from the time the district court accepted a plea could "deprive the district court of the power to review a plea before it enters a judgment of conviction and sentence," an outcome we found to be unreasonably unfair. *Id.* at ¶ 10. Contributing to the unfairness of this alternative interpretation was our assumption, culled from the dictum in *Abeyta*, that failure to bring a timely motion to withdraw a guilty plea had jurisdictional consequences. *Id.*

¶ 17 *State v. Reyes*, 2002 UT 13, 40 P.3d 630, completed the evolution of our analysis of the thirty-day filing period with the express recognition of its jurisdictional status as an integral part of the holding. Moreover, we accorded increased veneration to our earlier commentaries on the jurisdictional status of the thirty-day filing window of section 77–13–6(2)(b), elevating them from dicta to holdings. *Id.* at ¶ 3. When we explained why we were turning away Mr. Reyes's motion to withdraw his plea, we stated:

> We decline to address this issue because we do not have jurisdiction to address it. Section 77–13–6 of the Utah Code was amended in 1989 to require a defendant to file a motion to withdraw a guilty plea within thirty days after the entry of the plea. Utah Code Ann. § 77–13–6 (1999). We have held that failure to do so extinguishes a defendant's right to challenge the validity of the guilty plea on appeal. *See State v. Abeyta*, 852 P.2d 993, 995 (Utah 1993) (noting that "the plea statute limits a defendant's right to withdraw his or her guilty plea to thirty days after entry of the plea" and that "thereafter, the right is extinguished"); *State v. Ostler*, 2001 UT 68, ¶ 10, 31 P.3d 528 (noting that "because *State v. Johnson*, 856 P.2d 1064, 1067 (Utah 1993), requires a defendant to move for a withdrawal in the district court before he can challenge a plea on appeal, his appeal rights on the plea question could be cut off."). Accordingly, because Reyes did not move to withdraw his guilty plea within thirty days after the entry of the plea, we lack jurisdiction to address the issue on appeal.

*Id.* Although the retroactive promotion of dictum to holding is a practice we do not endorse, we neither apologize for our assessments of the jurisdictional nature of the thirty-day filing period in *Abeyta* and *Ostler* nor retreat from what is clearly our holding in *Reyes*, all of which imposes a jurisdictional

2. In *Ostler*, we were asked to review the court of appeals's holding in *State v. Price*, 837 P.2d 578 (Utah Ct.App.1992), that "section 77–13–6(2)(b)'s thirty-day limit on filing a motion to withdraw a plea of guilty runs from the date of the plea colloquy and is jurisdictional in nature." *Ostler*, 2001 UT 68 at ¶ 3, 31 P.3d 528. Once we concluded that the thirty-day limit ran from the date of the entry of final judgment and not from the plea colloquy, Mr. Ostler's motion was considered timely. *Id.* at ¶ 12. We did not, nor did we need to, go on to address whether *Price* was correct in holding that the thirty-day limit of section 77–13–6(2)(b) was indeed jurisdictional.

bar on late-filed motions to withdraw guilty pleas.

¶ 18 Due to the unconventional treatment we have afforded it, we have never engaged in a thoroughgoing analysis of why section 77–13–6(2)(b) is jurisdictional. Though largely unexplained, our approach to the thirty-day filing period has been consistent. More importantly, the filing limitation's presumptive jurisdictional effect has shaped the outcome of the cases in which it has played a role. For example, in *Ostler*, the argument that the thirty-day filing period should commence from the date on which final judgment is entered may owe its persuasive force to the "serious problems" that we noted could beset a scheme in which a jurisdictional motion filing period began to run from the date of the plea colloquy. *See Ostler*, 2001 UT 68 at ¶ 10, 31 P.3d 528.

¶ 19 That a body of jurisprudence has developed around the view that the filing limitation is jurisdictional is reason enough to sustain its legitimacy even in the absence of a strong analytical pedigree where no compelling grounds have appeared to disturb it. *Reyes*, in fact, states that the filing limitation is jurisdictional. 2002 UT 13 at ¶ 3, 40 P.3d 630. Despite its imperfect lineage, *Reyes* is entitled to precedential dignity. Mr. Merrill does not directly ask us to overturn *Reyes*, but rather challenges its value as precedent. Because the issue was not briefed, we do not address *Reyes's* vulnerability to being overturned. We stand by *Reyes's* claim to precedential status and apply its holding here. Accordingly, we affirm the district court's denial of Mr. Merrill's motion to withdraw his plea as untimely.

¶ 20 We reject Mr. Merrill's contention that even if *Reyes* has precedential status, it is not controlling here because it concerned the appellate jurisdiction of the Supreme Court, not the jurisdiction of the district court, to consider an untimely motion to withdraw a guilty plea. However, the jurisdictional implications of section 77–13–6(2)(b) are independent of the court whose jurisdiction the defendant seeks to invoke. We consequently find *Reyes* to be controlling and confirm our conclusion there that section 77–13–6(2)(b) is indeed jurisdictional.

## II. THE CONSTITUTIONALITY OF UTAH CODE SECTION 77–13–6(2)(b)

¶ 21 Next, Mr. Merrill attacks the constitutionality of the thirty-day limitation found in Utah Code section 77–13–6(2)(b). Utah Code Ann. § 77–13–6(2)(b) (Supp.2004). He insists that the imposition of this, or any, finite period to bring a motion to withdraw a guilty plea violates five constitutional guarantees: (1) the open courts provision of article I, section 11 of the Utah Constitution; (2) the separation of powers provision of article V, section 1 of the Utah Constitution; (3) the promise of due process contained in the Fourteenth Amendment to the United States Constitution; (4) the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and (5) the uniform application of laws provision found in article I, section 24 of the Utah Constitution.

¶ 22 To prevail on any of his constitutional claims, Mr. Merrill must overcome the presumption that section 77–13–6 is constitutional. *Soc'y of Separationists, Inc. v. Whitehead*, 870 P.2d 916, 920 (Utah 1993). However, Mr. Merrill's brief paints his claims of unconstitutionality with a broad brush and little pigment. The absence of a visible analytical landscape leaves us with little to view and assess. The presumption of constitutionality necessarily restricts our right and responsibility to advance through our own analysis constitutional challenges which Mr. Merrill has presented to us in the form of hint or suggestion, and he cannot overcome the presumption that the statute is constitutional. We nevertheless take up each claim in turn.

### A. Open Courts

¶ 23 Mr. Merrill challenges the jurisdictional bar imposed by Utah Code section 77–13–6(2)(b) as a violation of article I, section 11 of the Utah Constitution, known as the open courts provision. Utah Const. art. I, § 11. This provision ensures "that citizens of Utah have a right to a remedy for an injury." *Judd ex rel. Montgomery v. Drezga*, 2004 UT 91, ¶ 10, 103 P.3d 135. We rely on the open courts provision to ensure that

no law unreasonably "diminish[es] or eliminate[s] a previously existing right to recover for an injury." *Id.*

¶ 24 Mr. Merrill reminds us that we have held statutory time limitations for seeking habeas corpus relief to be unconstitutional. *Julian v. State,* 966 P.2d 249, 253 (Utah 1998). In *Julian,* we used the open courts provision to reject legislative attempts to impose time limits on defendants who seek to access habeas corpus relief. *Id.* We reasoned that the right to a habeas corpus petition is a right bestowed by the judicial branch not subject to legislation. *Id.* In a concurring opinion, Justice Zimmerman wrote that the time limitations imposed on filing habeas actions were offensive because of the writ's place as "one of the cornerstones of Anglo–American jurisprudence and an essential constitutional tool we give every citizen so that they can raise challenges to the lawfulness of their confinements." *Id.* at 259 (Zimmerman, J., concurring); *see also Hurst v. Cook,* 777 P.2d 1029, 1033 (Utah 1989) (explaining the writ of habeas corpus). Because it serves as essentially the last resort for persons wrongfully deprived of their liberty, the right to seek habeas corpus can never be extinguished by the mere passage of time. *Julian,* 966 P.2d at 254.

¶ 25 Mr. Merrill contends that the right to petition to withdraw a guilty plea is the equivalent of a habeas corpus petition. He argues that the legislature has no more authority to limit the time to file a motion seeking to withdraw a guilty plea than to impose filing deadlines on habeas corpus petitions. Mr. Merrill's argument relies on the fundamental assumption that a motion to withdraw a guilty plea has the same legal valence as a habeas corpus petition. This assumption is false. Although a defendant's right to attempt to withdraw his guilty plea is an important one, its place within the framework of our system of justice cannot reasonably be compared to the stature of the habeas corpus petition. The "great writ" of habeas corpus has earned recognition and protection within our constitution. Utah Const. art. I, § 5 ("The privilege of the writ of habeas corpus shall not be suspended, unless, in case of rebellion or invasion, the public safety requires it."). The right to withdraw a guilty plea has not. Moreover, unlike the writ of habeas corpus, a motion to withdraw a guilty plea is not a last resort. This fact is made clear within the text of the current version of Utah Code section 77–13–6. Immediately following section 77–13–6(2)(b), which imposes the thirty-day filing limit, section 77–13–6(2)(c) preserves the right of a defendant to pursue challenges to the lawfulness of his guilty plea under both the Post–Conviction Relief Act ("PCRA") and Utah Rule of Civil Procedure 65C, provisions that embody the elements of the traditional writ of habeas corpus. Utah Code Ann. § 77–13–6(2)(c) (Supp.2004).

¶ 26 Thus, although the thirty-day filing limit is jurisdictional, it does not foreclose a court from taking up the merits of a defendant's challenge to his guilty plea. Mr. Merrill has not presented us with any reason to extend the same dignity we bestow on a habeas corpus petition to a motion to withdraw a guilty plea. Without congruence between a motion to withdraw a guilty plea and a habeas corpus petition, and we find none, Mr. Merrill's open courts argument fails.

### B. Separation of Powers

¶ 27 Mr. Merrill's separation of powers argument appears to have much in common with his open courts claim. Like the open courts provision, the separation of powers provision found in article V, section 1 of the Utah Constitution imposes a limit on legislative power. Utah Const. art. V, § 1. Mr. Merrill again attempts to align a petition for habeas corpus with a motion to withdraw a guilty plea. In this instance, he argues that because we have previously held that the authority to shape the procedural elements of habeas corpus is vested exclusively in the judicial branch, *Julian,* 966 P.2d at 253, we should similarly limit the legislature's power to define the procedural elements of a motion to withdraw a guilty plea. Because section 77–13–6 is a product of legislative action, Mr. Merrill argues that it violates the separation of powers provision. However, as discussed above, *infra* part IIA, the dissimilarity between the two forms of relief dooms Mr. Merrill's separation of powers challenge,

just as it undermined his open courts challenge.

## C. Due Process

¶ 28 Due process requires that "the defendant receive[s] full notice of the charges, the elements, how the defendant's conduct amounts to a crime, the consequences of the plea, etc." *Salazar v. Utah State Prison*, 852 P.2d 988, 991 (Utah 1993). The requirement that a guilty plea be both knowing and voluntary to be valid further refines the "full notice" mandate and thereby implicates due process. The United States Supreme Court has held that due process as required by the Fourteenth Amendment of the United States Constitution can be obtained by a meaningful opportunity for a hearing. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

¶ 29 Mr. Merrill contends that he did not enter a voluntary and knowing plea because he was suffering from religious delusions brought on as a side effect of his medicine, Zoloft. A jurisdictional bar on untimely motions to withdraw guilty pleas, he argues, denies him and similarly situated defendants "a means by which they can reappear before the [district] court and have these due process rights enforced." This element of Mr. Merrill's argument injects a second and ultimately more relevant due process consideration into his claim. While an unknowing or involuntary guilty plea is likely to constitute a denial of due process, an absolute prohibition against providing a forum to a defendant in which he may assert defects in his guilty plea would certainly violate constitutional due process guarantees.

¶ 30 Section 77–13–6 does not create an absolute bar, but according to Mr. Merrill it nevertheless unconstitutionally impedes his opportunity to bring his claim that his plea was not knowing and voluntary before a court. We disagree. Section 77–13–6 provides two opportunities to challenge the validity of a guilty plea: a motion to withdraw the plea, which must be brought within the thirty-day statutory window, and an action for post-conviction relief, which may be brought after the expiration of the thirty-day statutory period. Utah Code Ann. § 77–13–6 (Supp.2004). Thus, section 77–13–6 provides a meaningful opportunity for a hearing before the district court, regardless of whether the thirty-day limit was met. This statutory scheme satisfies the demands of due process.

## D. Equal Protection & Uniform Operation of Laws

¶ 31 Finally, we review Mr. Merrill's equal protection claims. Mr. Merrill seeks to invalidate section 77–13–6(2)(b) under the Equal Protection Clause of the United States Constitution and the uniform operation of laws provision of the Utah Constitution. The two provisions are substantially parallel. *See* U.S. Const. amend. XIV, § 1 ("No State shall ... deny to any person within its jurisdiction the equal protection of the laws."); Utah Const. art. I, § 24 ("All laws of a general nature shall have uniform operation."); *see also Anderson v. Provo City*, 2005 UT 5, ¶¶ 17–18, 108 P.3d 701 (stating that the two provisions embody the same general principles, although under some circumstances, Utah's uniform operation of laws provision is more rigorous than the federal equal protection clause). Under each, we must determine what classifications are created by the statute, whether they are treated disparately, and whether the disparate treatment serves a reasonable government objective. *State v. Schofield*, 2002 UT 132, ¶ 12, 63 P.3d 667. Because our analysis under the uniform operation of laws provision is at least as rigorous as it would be under the federal equal protection provision, we limit our review to Mr. Merrill's state constitutional claims.

¶ 32 According to Mr. Merrill, section 77–13–6(2) unconstitutionally discriminates against a class of defendants who delay their attempts to withdraw guilty pleas after the statutory thirty-day deadline has passed. He reasons that these defendants are substantially disadvantaged when compared to defendants who timely file motions to withdraw their pleas because section 77–13–6(2) imposes disparate treatment on the two classes in two ways: (1) those who meet the deadline "can obtain immediate relief," while those who do not meet the deadline must

remain incarcerated while they "exhaust appellate remedies" before seeking post-conviction relief through the PCRA; and (2) defendants seeking post-conviction relief are not guaranteed the benefit of appointed counsel because the PCRA permits courts to appoint counsel on a pro bono basis but does not require it, *see* Utah Code Ann. § 78–35a–109(1) (2002). We are not persuaded that this statutory scheme violates the uniform operation of laws provision.[3]

¶ 33 Article I, section 24 of the Utah Constitution provides: "All laws of a general nature shall have uniform operation." Utah Const. art. I, § 24. Operational uniformity, in turn, requires that persons similarly situated be treated similarly. *Malan v. Lewis*, 693 P.2d 661, 670 (Utah 1984). We have adopted a two-part test to measure whether a statute meets this standard: "First, a law must apply equally to all persons within a class. Second, the statutory classifications and the different treatment given the classes must be based on differences that have a reasonable tendency to further the objective of the statute." *Id.* (citations omitted); *accord Schofield*, 2002 UT 132 at ¶ 12, 63 P.3d 667; *State v. Mohi*, 901 P.2d 991, 997 (Utah 1995); *Blue Cross & Blue Shield v. State*, 779 P.2d 634, 637 (Utah 1989).

¶ 34 The first component of our assessment model presupposes that the statute creates classifications, casting its net over some persons based on their status or conduct while excluding others. We long ago noted that the creation of classes and the discrimination among them is inherent to all laws:

> "[E]very legislative act is in one sense discriminatory. The Legislature cannot in one act legislate as to all persons or all subject matters. It is inclusive as to some class or group and as to some human relationships, transactions, or functions and exclusive as to the remainder. For that reason, to be unconstitutional the discrimination must be unreasonable or

arbitrary. A classification is never unreasonable or arbitrary in its inclusion or exclusion features so long as there is some basis for the differentiation between classes or subject matters included as compared to those excluded from its operation, provided the differentiation bears a reasonable relation to the purposes to be accomplished by the act."

*Lee v. Gaufin*, 867 P.2d 572, 577 n. 6 (Utah 1993) (quoting *State v. Mason*, 94 Utah 501, 507, 78 P.2d 920, 923 (Utah 1938)).

¶ 35 In its broadest sense, section 77–13–6(2) classifies persons on the basis of their relationship to the criminal justice system. It reaches only those persons who have pleaded guilty to criminal offenses and excludes both persons who are not defendants in any criminal proceeding and defendants in criminal actions who did not enter guilty pleas.

¶ 36 Within the class of defendants who enter guilty pleas, section 77–13–6(2) has uniform application: all defendants are made subject to the same time limit to attempt to withdraw their pleas by motion. Although uniform in its application among defendants who plead guilty, section 77–13–6(2) creates a subclassification composed of defendants who seek to withdraw their guilty pleas outside the thirty-day statutory window. Mr. Merrill is in this group, and it is this assemblage that he attacks as unconstitutionally discriminatory. While we agree that section 77–13–6(2) creates the class in which Mr. Merrill finds himself, we disagree with Mr. Merrill's contention that he and his fellow class members are the victims of unconstitutionally disparate treatment.

¶ 37 We have previously applied the test of operational uniformity to statutorily imposed deadlines created by statutes of limitations and repose. A review of one case in this category highlights the telling differences between deadlines that run afoul of article I,

---

3. We note also that Mr. Merrill's argument fails to consider that even those defendants who move to withdraw their guilty pleas within thirty days are not guaranteed any benefits from doing so. "A plea of guilty or no contest may be withdrawn only upon leave of the court and a showing that it was not knowingly and voluntarily made."

Utah Code Ann. § 77–13–6(2)(a). If a defendant's challenge is not accepted by the court, he is also subject to the PCRA. Thus, defendants whose motions are timely filed but not accepted by the court are in no better position than those who failed to file their motions within thirty days.

section 24, and the plea withdrawal time limit imposed by section 77–13–6, which we conclude does not.

¶ 38 In *Lee*, we held that the medical malpractice statutes of limitation and repose unconstitutionally discriminated against minors whose malpractice claims were extinguished by the statute before the minors reached the age of majority. 867 P.2d at 589. In *Lee*, the targets of the discriminatory classification could do nothing to escape their fate. They did not join their statutory classification by choice. They were not volunteers. The minors who were statutorily cut off from the opportunity to recover for injuries sustained by the negligent conduct of a health care professional did not have the option to accelerate their ages to escape the consequences of the statute. Thus, the challenged limitation worked a discriminatory hardship on an identifiable group of persons who were singled out for treatment different from that to which other identifiable groups were made subject.

¶ 39 By contrast, section 77–13–6 treats alike every defendant who enters a guilty plea. As of the moment a court accepts his guilty plea, that defendant becomes a member of the class of persons covered by the statute. Section 77–13–6 extends to each of these defendants the opportunity to obtain relief from the consequences of his plea by filing a motion within thirty days of entry of a final judgment. No defendant is consigned to the disadvantaged class merely because he pleaded guilty. Instead, each enjoys an equal opportunity to avoid whatever disadvantages might attend the PCRA by moving to withdraw his guilty plea within the thirty-day statutory period. In this way, the classification scheme created by the statute is conditional and contingent, and membership in the class is voluntary. It "applies equally" to all defendants who plead guilty, including those whose guilty pleas were unlawfully obtained or who, for some other reason, may be entitled to withdraw their pleas.

¶ 40 The subclass of defendants who seek to withdraw their guilty pleas after the thirty-day window has closed owes its existence to the uniform operation and equal application of the statute. All of its members, including Mr. Merrill, were once among the class of persons eligible to seek to withdraw their pleas by motion and were subject to reclassification once the thirty-day statutory period elapsed.

¶ 41 We do not agree with Mr. Merrill that a classification scheme in which persons are grouped according to whether they follow procedural rules is unconstitutionally arbitrary or unreasonable. We have previously made a similar point in *Wood v. University of Utah Medical Center*, 2002 UT 134, 67 P.3d 436. In *Wood*, we confronted equal protection and uniform operation of laws challenges to the Utah Wrongful Life Act. *Id.* at ¶ 1. That Act bars actions "based on a claim that but for the act or omission of another, a person would not have been permitted to have been born alive, but would have been aborted." Utah Code Ann. § 78–11–24 (2002). The Act created a class of persons whose reproductive choices were misdirected by the alleged negligence of others but who had no remedy for the negligent conduct. In concluding that the statute was constitutional despite its targeting of one class of persons, we wrote that "we see no reason why persons who would make a particular choice ... should, for constitutional purposes, be recognized as a class and treated any differently from those who would choose otherwise." *Id.* at ¶ 35. We now apply this same reasoning to Mr. Merrill's case: where a defendant chooses to subject himself to the requirements of the PCRA by failing to file a motion to withdraw within thirty days, the consequences of that choice, to the extent it results in consigning a defendant to a class, is not unconstitutionally arbitrary or unreasonable.

¶ 42 As he has done with all of his arguments to overturn the thirty-day time limit, Mr. Merrill invokes *Julian v. State*, 966 P.2d 249 (Utah 1998), to bolster his article I, section 24 argument. We agree that there are some factual similarities between this case and *Julian*. The statutory time limit on applications for habeas corpus relief that we addressed in *Julian*, like the time limit in section 77–13–6, applied equally to all criminal defendants. Further, both statutes created a subclass of defendants composed of

persons who might otherwise have been eligible for a certain form of relief but were foreclosed from pursuing it because the allotted statutory time limit had elapsed.

¶ 43 The outcome of *Julian,* however, did not turn on the uniform operation of laws provision of article I, section 24. Rather, we grounded our holding in the separation of powers and open courts provisions, article V, section 1, and article I, section 11, respectively, of the Utah Constitution. *Id.* at 253. The applicability of these constitutional provisions to legislative efforts to reign in access to habeas corpus relief underscores the dissimilarities between the "great writ" and the opportunity to withdraw a guilty plea. As we noted *supra,* the writ of habeas corpus enjoys constitutional protection, whereas the right to withdraw a guilty plea does not. ¶ 25. We do not by this comparison seek to shrivel the statutorily-guaranteed right to seek withdrawal of a guilty plea into insignificance. We do intend to make clear our view that Mr. Merrill's attempt to construct his entire multifaceted challenge to section 77–13–6 on *Julian* packs little persuasive punch.

¶ 44 Even if section 77–13–6 were to create a classification worthy of constitutional recognition, the classification is based on differences that have a reasonable tendency to further the objective of the statute. *Malan,* 693 P.2d at 670.[4] Section 77–13–6's statement that those defendants who do not challenge their guilty pleas within the thirty-day limit are subject to the PCRA is clearly intended to protect the State from difficulties associated with prosecuting stale claims and generally preserves the judiciary's interest in the finality of judgments. However, Mr. Merrill argues that these objectives cannot justify limiting a defendant's relief to that provided by the PCRA. He complains that the PCRA imposes two substantial handicaps on his quest for relief: a requirement that he pursue all appellate remedies before seeking post-conviction relief and the denial of the right to counsel.

¶ 45 The right to seek withdrawal of a guilty plea is granted by statute. It is a right without express constitutional protection. We express no opinion concerning whether some scheme affording defendants the opportunity to challenge their guilty pleas through a means other than direct appeal is constitutionally required. We agree with Mr. Merrill that some access to the courts for the purpose of reviewing the lawfulness of a guilty plea is a fundamental right. Unlike Mr. Merrill, we do not consider fundamental a defendant's right to maintain a perpetual grip on all procedural levers to withdraw a guilty plea. In our view, the relief provided by section 77–13–6 to tardy plea withdrawal applicants through the PCRA is adequate to justify the disparate treatment of defendants in Mr. Merrill's classification.

¶ 46 We may quickly dispatch Mr. Merrill's contention that it takes longer for a defendant to pursue post-conviction relief than direct appeal. He traces this alleged disability to Utah Code section 78–35a–106(1), which prohibits a person from pursuing post-conviction relief on any ground that may be raised on direct appeal. Utah Code Ann. § 78–35a–106(1) (2002). We do not concede that the pursuit of post-conviction remedies is necessarily a longer process than a direct appeal. Mr. Merrill has offered no data to support his claim, nor does Mr. Merrill risk delay in seeking PCRA relief while his direct appeal is pending. The thirty-day window to file a motion to withdraw his guilty plea ran in tandem with the thirty-day period to file a notice of appeal. He filed neither within the permitted time. Thus, there was no direct appeal that could delay Mr. Merrill's PCRA petition.

¶ 47 The absence of a right to counsel to seek PCRA relief similarly fails to jeopardize the constitutionality of section 77–13–6. The PCRA expressly authorizes district courts to appoint counsel on a pro bono basis to a

---

4. Mr. Merrill argues that we should apply a "strict scrutiny" test to section 77–13–6 because the fundamental right of access to courts is implicated. However, "[the language 'strict scrutiny' and 'rational basis'] comes from federal equal protection analysis under the Fourteenth Amend-

ment and is not readily transposed to the balancing test we apply under the uniform operation of laws provision of the Utah Constitution." *Ryan v. Gold Cross Servs.,* 903 P.2d 423, 426 (1995) (citations omitted). Accordingly, we limit our analysis to the parameters of Utah law.

defendant pursuing post-conviction relief. *Id.* § 78–35a–109. While not guaranteeing appointed counsel, the PCRA does not deny defendants access to counsel. Mr. Merrill has made no demonstration that PCRA petitioners like himself, who seek to withdraw guilty pleas, are generally, or ever, required to pursue their claims unaided by counsel. Thus, we cannot conclude that defendants who seek post-conviction relief are denied operational uniformity of the laws in this matter. Mr. Merrill's personal experience clearly fails to advance his cause. He has enjoyed the benefit of skilled pro bono counsel before this court. If the work of Mr. Merrill's counsel before us is in any way representative of the quality of advocacy afforded members of Mr. Merrill's class, the PCRA scheme for providing access to counsel imparts no hardship on defendants. Thus, we conclude that Utah Code section 77–13–6(2)(b) violates neither the equal protection provision of the United States Constitution nor the uniform operation of laws provision of the Utah Constitution.

## CONCLUSION

¶ 48 We conclude that the thirty-day limit for withdrawal of a guilty plea imposed by Utah Code section 77–13–6(2)(b) creates a constitutionally permissible jurisdictional bar. Accordingly, we affirm the ruling of the district court.

¶ 49 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice PARRISH concur in Justice NEHRING's opinion.