2007 UT App 85

**STATE of Utah, Plaintiff and Appellee,**

v.

**Leonard Preston GALL, Defendant and Appellant.**

**No. 20040540–CA.**

Court of Appeals of Utah.

March 22, 2007.

---

**21.** 2001 UT 97, 37 P.3d 1070.

**22.** *Id.* ¶ 8.

**23.** *Id.* ¶ 13.

**24.** *Id.* ¶ 14.

**25.** *Id.* ¶ 10.

James B. Gottstein, Anchorage, Alaska, and Nathan N. Jardine, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and Christopher D. Ballard, asst. atty. gen., Salt Lake City, for Appellee.

Before Judges BILLINGS, ORME, and THORNE.

## OPINION

ORME, Judge:

¶ 1 Pursuant to a plea agreement, Defendant Leonard Preston Gall pled guilty and mentally ill to manslaughter, *see* Utah Code Ann. § 76–5–205 (2003), and theft, both second degree felonies, *see id.* §§ 76–6–404, –412(1)(a), and stipulated to entry of a judgment of not guilty by reason of insanity to aggravated burglary, a first degree felony, *see id.* § 76–6–203. Defendant now appeals, contending that trial counsel was both ineffective and disloyal when he represented Defendant at the sentencing hearing after Defendant terminated him and after he formally withdrew as counsel. We remand for the trial court to determine whether and to what extent the purported problems with trial counsel had been resolved prior to Defendant's sentencing hearing.

## BACKGROUND

¶ 2 In 1993, when he was approximately sixteen years old, Defendant began taking Paxil in an effort to manage his mental illness. Roughly two years later, Defendant abruptly discontinued the medication, which, in the words of one of the experts who

considered Defendant's history, "le[d] to [a] recurrence of paranoid delusions several weeks into the withdrawal period[.]" While his delusions began to subside after about six months, in 1997 Defendant's symptoms again worsened, leading to increasingly aggressive psychiatric treatments, including hospitalization and electroshock therapy. From 1997 to 2001, Defendant also took Prozac, Wellbutrin, and Desyrel, antidepressant medications, as well as Zyprexa, a serotenergic antipsychotic medication.

¶ 3 As is common with mental illness, Defendant had difficulty remaining on his psychiatric medications, and in early 2001, while living with his mother, Defendant stopped taking them altogether. As a result, his condition worsened significantly. Later that year, as Defendant explains in his brief, Defendant's mother "refused to let [him] continue living with her unless he took all his medication as prescribed[.]" Faced with this ultimatum, Defendant left his mother's home and moved in with a friend.

¶ 4 As a result of Defendant's refusal to take his medications, his mother also made several attempts to have him committed or otherwise to secure mental health treatment for him. Despite these efforts, mental health providers determined—incorrectly, in retrospect—that Defendant was not an imminent danger to himself or others and was not, therefore, eligible for involuntary commitment. On December 14, 2001, while visiting his mother at her home, Defendant killed her with a knife and an ax. After an unsuccessful suicide attempt, Defendant took his mother's car and drove to Reno, Nevada. He was later apprehended and transported back to Utah.

¶ 5 The State originally charged Defendant with one count each of murder, a first degree felony, *see* Utah Code Ann. § 76–5–203(2),(3) (2003), and theft, a second degree felony, *see id.* §§ 76–6–404, –412(1)(a). An attorney from Salt Lake Legal Defenders Association was initially appointed to represent Defendant, but after a couple of substitutions, Defendant retained Steven R. McCaughey as

counsel in February 2003.[1] In September 2003, Defendant was charged in an amended information with a reduced charge of manslaughter, a second degree felony, *see id.* § 76–5–205; theft, a second degree felony, *see id.* §§ 76–6–404, –412(1)(a); and aggravated burglary, a first degree felony, *see id.* § 76–6–203(1),(2). Upon McCaughey's advice, and pursuant to a plea agreement, Defendant pled guilty and mentally ill to the manslaughter and theft charges and, pursuant to an earlier stipulation, not guilty by reason of insanity to the aggravated burglary charge. Sentencing was scheduled for March 2004, but it was postponed until May 2004. Defendant made no motion to withdraw his pleas.

¶ 6 On March 22, 2004, the Food and Drug Administration issued advisory warnings regarding the effects of certain selective serotonin reuptake inhibitors (SSRIs), including Paxil, and certain serotonin-norepinephrine reuptake inhibitors (SNRIs), including Wellbutrin. Among the newly discovered information was research indicating that SSRIs and SNRIs can cause psychosis and episodes of extreme violence in some individuals who take them. Based on this new information, Defendant contended that his psychiatric history, including episodes of extreme violence, was iatrogenic in nature, i.e., "induced by a physician." *Webster's Third New Int'l Dictionary* 1119 (1993). More specifically, Defendant believed that his psychiatric medications caused him to kill his mother. Further, Defendant believed that this information would help him obtain a reduction in the degree of his offense. *See* Utah Code Ann. § 76–3–402(1) (Supp.2003) ("If the court, having regard ... to the history ... of the defendant, concludes it would be unduly harsh to record the conviction as being for that degree of offense established by statute ..., the court may ... enter a judgment of conviction for the next lower degree of offense[.]").

¶ 7 Believing this information would be favorable to his case, Defendant brought it to McCaughey's attention. When McCaughey

---

1. Susanne Gustin–Furgis also entered an appearance as co-counsel in March 2004, during the sentencing phase.

failed to act upon it, Defendant submitted a letter to the trial court seeking a reduction of the degree of his offense pursuant to section 76–3–402. In the same letter, Defendant requested that his sentencing hearing be delayed in order "to sort out what should be done" regarding the likelihood that "the psychiatric medications ... precipitated/caused me to commit my crime."

¶ 8 Three days later, Defendant terminated McCaughey's representation, stating in a letter that he had "lost confidence" in him. The next day McCaughey filed a notice of withdrawal of counsel.[2] Nonetheless, a few days later, at the May 3, 2004, sentencing hearing, McCaughey represented Defendant as if he were still Defendant's attorney, and the trial court made no inquiry concerning counsel's discharge or withdrawal, nor did it otherwise address Defendant's previously stated dissatisfaction with counsel. As to Defendant's pro se motion to lower the degree of his offense, McCaughey stated that, in his judgment, "filing such a motion would really be frivolous in light of the circumstances of this case. But in deference to [Defendant] and his father, I would orally make that motion[.]"

¶ 9 The trial court denied the motion for a reduction of sentence, stating: "This was a crime of extreme violence and a 402 reduction is simply out of the question in this case." The trial court sentenced Defendant to serve indeterminate terms of one to fifteen years on both the manslaughter and theft charges, to run consecutively, with a weapons enhancement of one to five years.[3] Because the trial court found Defendant guilty and currently mentally ill, it then committed Defendant to the Utah Department of Human Services for confinement and treatment. *See* Utah Code Ann. § 77–16a–202(1)(a) (2003). With respect to the not guilty by reason of insanity judgment on the aggravated burglary charge, the trial court had previously committed Defendant to the Department's custody, possibly "for the rest of [his] life." This commitment is subject to review by the Department "at least once every six months." *Id.* § 77–16a–304(1) (Supp.2006).

¶ 10 This appeal followed the imposition of sentence. In August 2005, Defendant, through new appellate counsel, filed a motion for remand under rule 23B of the Utah Rules of Appellate Procedure, seeking entry of findings of fact and conclusions of law that Defendant believed were necessary to allow this court to consider claims that his trial counsel rendered ineffective assistance leading up to his guilty pleas. *See* Utah R.App. P. 23B. We denied Defendant's rule 23B motion because he had not filed a timely motion to withdraw his guilty pleas. And the Utah Supreme Court recently held that there is no jurisdiction to appeal a guilty plea if there was no motion to withdraw the plea. *See State v. Merrill*, 2005 UT 34, ¶¶ 20, 48, 114 P.3d 585 (concluding that failure to file a timely motion to withdraw a guilty plea is a "constitutionally permissible jurisdictional bar" that extinguishes the right to challenge the guilty plea on direct appeal). *See also State v. Norris*, 2007 UT 5, ¶ 9, 152 P.3d 305 ("An unconditional guilty plea waives any right the defendant may have had to challenge ... his conviction on its merits."); *State v. Nicholls*, 2006 UT 76, ¶ 6, 148 P.3d 990 (stating that because defendant failed to withdraw his guilty plea within the time period specified by statute, he could only challenge his plea under the Post–Conviction Remedies Act). Therefore, this appeal is limited to the issue of sentencing, and the only question before us is whether Defendant's Sixth Amendment right to counsel was violated when McCaughey represented him at sentencing.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 11 Defendant argues that his trial counsel was disloyal and provided ineffective

---

2. Susanne Gustin–Furgis, McCaughey's co-counsel, also filed a notice of withdrawal.

3. The written sentence and commitment order reads: "Court order[s] 1–6 years for weapons enhancement." This was a clerical error. The trial court could not lawfully have imposed an additional sentence of 1–6 years as an enhancement because theft and manslaughter are second degree felonies. *See* Utah Code Ann. § 76–3–203.8(2) (Supp.2006) (stating that the court may increase the maximum sentence by *five* years for a second or third degree felony). As such, the trial court should correct the written sentencing order to reflect the one to five year enhancement.

assistance by representing Defendant at the sentencing hearing after Defendant discharged him. Ordinarily, "[w]hen the question of trial counsel ineffectiveness is raised for the first time on appeal and our review is confined to the trial record, we determine, as a matter of law, whether defense counsel's performance constituted ineffective assistance." *State v. Ellifritz*, 835 P.2d 170, 175 (Utah Ct.App.1992). The peculiar posture in which this case comes to us, however, precludes us from making that determination.

## ANALYSIS

¶ 12 Defendant argues that McCaughey was ineffective when he continued to represent Defendant at the sentencing hearing despite his termination and withdrawal. Although it may be more a question of authority than effectiveness,[4] we agree that if McCaughey had been discharged as counsel, it was improper for him to represent Defendant at the sentencing hearing absent some peculiar understanding between the parties or directive of the trial court. But nothing of this sort is in the record. Likewise, with the notice of withdrawal in its file, it was improper for the trial court to forge ahead without exploring the matter with counsel. "The Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.' " *United States v. Gonzalez-Lopez*, — U.S. ——, ——, 126 S.Ct. 2557, 2561, 165 L.Ed.2d 409 (2006) (quoting U.S. Const. amend. VI) (alterations in original). In cases where a defendant has retained his own counsel,[5] "an element of this right is the right of a defendant ... to choose who will represent him." *Id.* "Where the right to be assisted by counsel of one's choice is wrongly denied, ... it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is complete when the defendant is erroneously prevented from being represented by the lawyer he wants[.]" *Id.* at 2563 (internal quotation marks omitted).

¶ 13 If Defendant did not rescind his termination of McCaughey and the trial court simply proceeded with the sentencing hearing anyway, Defendant's Sixth Amendment right to counsel of his choice was violated and "this violation is not subject to harmless-error analysis." *Id.* at 2566. If, on the other hand, the prior troubles had been smoothed over or Defendant otherwise desired McCaughey's services at sentencing, there was no problem with the trial court sentencing Defendant while he was represented by McCaughey. Our difficulty is that, given the state

---

4. Defendant also argues that apart from his concerns about McCaughey's authority to represent him at sentencing, the quality of McCaughey's representation was constitutionally deficient. More specifically, Defendant claims that McCaughey's statement during sentencing that the offense reduction motion was "frivolous" constitutes per se ineffectiveness and disloyalty. We disagree. Characterizing Defendant's motion as "frivolous" is not per se indicative of ineffective or disloyal assistance. *Cf. Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) (requiring appellate counsel to treat issues counsel characterizes as frivolous in a prescribed way). In any event, Defendant has failed to demonstrate any prejudice resulting from the remark. The trial court quickly dismissed McCaughey's oral motion, stating that due to the extremely violent nature of the crime, any sentence "reduction [was] simply out of the question." Since it is evident that the trial court would not have seriously considered reducing Defendant's sentence no matter how the motion was phrased, we conclude that McCaughey's remark was harmless.

Defendant further contends that McCaughey failed to make any efforts on his behalf with respect to sentencing, and that this failure also constitutes ineffective assistance of counsel. This is simply not true. In fact, McCaughey assisted Defendant in securing a plea agreement that reduced the degree of the most serious charge from a first degree felony to a second degree felony. McCaughey also deferred to Defendant at sentencing and made the offense reduction motion stating, "the argument can be made that the circumstances of this case, being guilty but mentally ill, that [Defendant] deserves the benefit of that statute." We therefore conclude that McCaughey made reasonable efforts on behalf of Defendant at sentencing. *See State v. Parker*, 2000 UT 51, ¶ 11, 4 P.3d 778 (explaining that ineffectiveness will not be found if trial counsel's strategy can be considered tactically sound).

5. "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, — U.S. ——, ——, 126 S.Ct. 2557, 2565, 165 L.Ed.2d 409 (2006).

of the record, we have no idea which is the case.

¶ 14 Therefore, we remand to the trial court with instructions that it make a full inquiry and determine whether and to what extent any problems with trial counsel had been resolved prior to sentencing. *Cf. State v. Ford,* 793 P.2d 397, 404–05 (Utah Ct.App. 1990) (remanding for an evidentiary hearing to determine whether and to what extent the defendant had been harmed by bargaining with the prosecution without his counsel present). If the trial court determines that Defendant had consented to McCaughey's representation at sentencing despite McCaughey's apparent discharge and withdrawal, or that some other resolution had been reached off the record allowing McCaughey to proceed, the original sentence should stand. If, however, McCaughey's previous discharge was simply overlooked by all, or Defendant was misled about his unfettered right to replace retained counsel, there was no basis for McCaughey's participation in the sentencing hearing; Defendant was sentenced without the assistance of authorized and validly serving counsel; and the trial court should vacate Defendant's sentence and resentence him with the benefit of assistance from new counsel.

## CONCLUSION

¶ 15 One element of the Sixth Amendment right to counsel is a defendant's right to choose who will represent him if he is able to hire his own attorney. *See Gonzalez–Lopez,* 126 S.Ct. at 2561. Thus, Defendant had the right to have the attorney of his choice at his sentencing hearing. If McCaughey had been terminated, the trial court erred by allowing him to proceed, and Defendant's sentence should be vacated and he should be resentenced with the assistance of new counsel. If, however, the parties had reached an agreement or Defendant had otherwise consented to McCaughey's continued representation, Defendant's sentence should stand.

¶ 16 Accordingly, we remand for further proceedings in accordance with this opinion.

¶ 17 WE CONCUR: JUDITH M. BILLINGS and WILLIAM A. THORNE JR., Judges.