2007 UT 61

**STATE of Utah, Plaintiff and Appellee,**

v.

**Tamra RHINEHART, Defendant and Appellant.**

No. 20050635.

Supreme Court of Utah.

Aug. 14, 2007.

Mark L. Shurtleff, Att'y Gen., Laura B. Dupaix, Asst. Att'y Gen., Salt Lake City, N. George Daines, Donald G. Linton, Scott L. Wyatt, Logan, for plaintiff.

Elizabeth Hunt, Salt Lake City, for defendant.

NEHRING, Justice:

¶ 1 Michael Boudrero's body was discovered lying in the basement of a home under construction in North Logan, Utah, in July 2003. He had been shot twice, once in the chest and once in the back. Mr. Boudrero's ex-wife, Tamra Rhinehart, pled guilty to aggravated murder for her participation in the crime that took Mr. Boudrero's life. The district court sentenced her to life in prison without the possibility of parole.

¶ 2 After her sentence was imposed, Ms. Rhinehart brought this appeal. She places a

sizeable catalogue of issues before us. We will speak to the merits of two of the issues. We hold that the relevant statutory requirement contained in section 77–13–6—an attempt to withdraw a guilty plea on appeal must be preceded by a motion before the district court—is constitutional and has jurisdictional effect. *See* Utah Code Ann. § 77–13–6 (2004). We also hold that Ms. Rhinehart waived any right to challenge her bindover when she entered her guilty plea. Based on these holdings, we affirm the district court.

## BACKGROUND

¶ 3 Police discovered Mr. Boudrero's body lying in the basement of a vacant North Logan home still undergoing construction. Mr. Boudrero had been shot twice and left face down in the doorway of a storage room. Within a week of Mr. Boudrero's murder, police received an anonymous phone call from a woman who claimed to know the murderer's identity. The woman, later identified as Marnie Christianson and Ms. Rhinehart's hairdresser, suggested that Ms. Rhinehart was responsible for Mr. Boudrero's death. Ms. Christianson proposed police contact Jessica Goalen, Ms. Rhinehart's former babysitter and friend who, as we shall soon see, proved to be a source of valuable information about Ms. Rhinehart's ties to the murder. Ms. Christianson also suggested that Ms. Rhinehart had a boyfriend from South Africa who was likely involved.

¶ 4 That boyfriend was Craig Nicholls. Ms. Rhinehart met Mr. Nicholls earlier in 2003 on the Internet. Mr. Nicholls purchased a prepaid phone card in Brigham City, Utah, called Mr. Boudrero from a pay phone, and lured Mr. Boudrero to the vacant house by indicating that he had plumbing work at the site that Mr. Boudrero might perform. When Mr. Boudrero arrived at the house that fateful July evening, Mr. Nicholls shot him.

¶ 5 Although Ms. Rhinehart was not present at the shooting, she had incurred sizeable debts and had persuaded Mr. Nicholls to kill Mr. Boudrero for her pecuniary gain. For months prior to the murder, Ms. Rhinehart had been trying to secure insurance policies on the life of her former husband that named herself or one of her minor children as beneficiary. When Mr. Boudrero learned about the existence of one policy, he cancelled it. Other attempts by Ms. Rhinehart to purchase insurance on Mr. Boudrero's life failed because the applications were incomplete or because the companies determined that the size of the policies was disproportionate to Mr. Boudrero's means and therefore constituted excess coverage. A persistent Ms. Rhinehart finally succeeded in purchasing a $50,000 life insurance policy for Mr. Boudrero in April 2003 in which she listed herself as the beneficiary. Because the insurance company required Mr. Boudrero's signature prior to issuance, Ms. Rhinehart forged it. Ms. Rhinehart described these efforts to secure life insurance and the plan to kill her former husband to Ms. Goalen, who later recounted the information to police.

¶ 6 Police arrested Mr. Nicholls. He later pled guilty to aggravated murder and in accordance with his plea agreement, provided police with a sworn statement regarding his and Ms. Rhinehart's participation in Mr. Boudrero's murder. Mr. Nicholls agreed to testify against Ms. Rhinehart. (We considered an improperly brought challenge to his guilty plea in *State v. Nicholls*, 2006 UT 76, ¶ 6, 148 P.3d 990.)

¶ 7 In light of these events and associated evidence, the State charged Ms. Rhinehart with one count of aggravated murder, a capital felony in violation of Utah Code section 76–5–202; one count of forgery, a third degree felony in violation of section 76–6–501; and four counts of communications fraud, a second degree felony in violation of section 76–10–1801. In a separate information, the State charged Ms. Rhinehart with one count of burglary, a second degree felony in violation of section 76–6–202; three counts of theft, a second degree felony in violation of section 76–6–404; and another count of communications fraud.

¶ 8 The district court held a single preliminary hearing where both Mr. Nicholls and Ms. Goalen invoked their rights against self-incrimination and refused to testify against Ms. Rhinehart. Instead, the district court

admitted Mr. Nicholls's and Ms. Goalen's sworn statements into evidence. After being bound over on all charges, Ms. Rhinehart unsuccessfully moved to quash the bindover order at the preliminary hearing on the grounds that admission of hearsay violated her rights under the Confrontation Clause of the United States Constitution.

¶ 9 The burglary and aggravated murder cases were ultimately severed. Ms. Rhinehart was convicted in the burglary case, which proceeded first. She pled guilty nearly three months later to aggravated murder in exchange for the State's agreement to drop all other charges and to refrain from seeking the death penalty. Ms. Rhinehart appeals from this plea.

## ANALYSIS

### I. WE LACK JURISDICTION TO CONSIDER MS. RHINEHART'S CHALLENGE TO THE LAWFULNESS OF HER GUILTY PLEA

▮▮▮ ¶ 10 The Utah Constitution mandates that all criminal defendants be afforded the right of appeal. Utah Const. art. I, § 12; *see Manning v. State*, 2005 UT 61, ¶ 26, 122 P.3d 628. Moreover, a defendant who has " 'been prevented in some meaningful way from proceeding' " with a direct appeal of right is likely to have been denied the due process of law guaranteed in article I, section 7. *Manning*, 2005 UT 61, ¶ 26, 122 P.3d 628 (quoting *State v. Penman*, 964 P.2d 1157, 1166 (Utah Ct.App.1998)).

¶ 11 Ms. Rhinehart contends that the ineffectiveness of her trial counsel caused her to enter her plea and to fail to bring a timely motion to withdraw it. Under these circumstances, Ms. Rhinehart insists, the requirement contained in section 77–13–6 that she move to withdraw her guilty plea as a condition to challenging her plea on direct appeal unconstitutionally deprives her of her right to appeal.

¶ 12 Mindful that in *State v. Merrill*, 2005 UT 34, 114 P.3d 585, we settled the question of whether section 77–13–6 was jurisdictional and constitutional by answering "yes" to both inquiries, Ms. Rhinehart has nevertheless labored to set herself, her circumstances, and

her legal claims apart from those present in *Merrill. See also Grimmett v. State*, 2007 UT 11, ¶ 8, 152 P.3d 306 (confirming the constitutional and jurisdictional nature of the statute that experienced a substantial revision from the version in *Merrill*). She argues that we should now answer "no" to the two *Merrill* questions because it was her lawyer's fault that she entered her plea and failed to bring a timely motion to withdraw it. According to Ms. Rhinehart, neither *Merrill* nor any of our other pronouncements on section 77–13–6 confronted a claim of ineffective assistance of counsel. She claims that this distinction matters.

▮▮▮ ¶ 13 It does not. The ineffectiveness of a defendant's counsel may take many forms and result in relieving a criminal defendant of an undesirable result. The ineffectiveness of counsel that contributes to a flawed guilty plea, however, can spare a defendant the consequences of her plea only if the defendant makes out the same case required of every defendant who seeks to withdraw a plea: that the plea was not knowing and voluntary. *See State v. West*, 765 P.2d 891, 896 (Utah 1988) (remanding the case to determine whether the defendant's original plea was knowing and voluntary where the facts suggest that the defendant "received nothing in return for his guilty plea" and "apparently received seriously deficient information from all persons involved in his case"). As a practical matter, there is no alleged flaw in a guilty plea of a defendant represented by counsel that could not be attributed in some way to deficient representation. Examples abound in our cases, but a review confined only to the cases cited by Ms. Rhinehart, as illustrative of appeals that did not involve claims of ineffective assistance of counsel, provides sufficient evidence to defend this point. Mr. Merrill filed a late motion to withdraw his plea because he did not discover until too late the effect the psychotropic medicine he was taking may have had on his ability to enter a knowing and voluntary plea. *Merrill*, 2005 UT 34, ¶ 9, 114 P.3d 585. In *State v. Reyes*, 2002 UT 13, 40 P.3d 630, Mr. Reyes claimed that the trial court committed plain error when it failed to strictly comply with rule 11 of the

Utah Rules of Criminal Procedure. *Id.* ¶ 3. The defendant in *State v. Mullins*, 2005 UT 43, 116 P.3d 374, pointed to duress and his counsel's misrepresentation of critical aspects of the plea agreement as grounds for his motion to withdraw his plea. *Id.* ¶ 3. Each of these cases could easily have been recast as claims of ineffective assistance of counsel and, presumably, have been pursued under rule 23B of the Utah Rules of Appellate Procedure as Ms. Rhinehart seeks to do here.

¶ 14 The classification within which she seeks refuge—that defendants who seek leave to withdraw pleas based on claims of ineffective assistance of counsel are free of the constraints of section 77–13–6—is, therefore, a phantom classification. To honor this classification would be to invite every tardy application to withdraw a plea to be styled as a claim of ineffective assistance of counsel, a consequence that would vitiate section 77–13–6. We therefore hold that claims of ineffective assistance of counsel raised in the context of challenges to the lawfulness of guilty pleas are governed by section 77–13–6 as construed by *Merrill* and confirmed by *Grimmett*. We therefore are without jurisdiction to consider Ms. Rhinehart's claim.

## II. MS. RHINEHART WAIVED HER RIGHT TO CHALLENGE DEFECTS IN HER BINDOVER WHEN SHE ENTERED HER GUILTY PLEA

■■■ ¶ 15 Ms. Rhinehart next asks us to relieve her of the effect of her guilty plea because her preliminary hearing and bindover were infected with errors. Except in those instances in which errors affect the court's jurisdiction or where claims of error are expressly preserved for appeal, a conviction or guilty plea acts as a waiver of earlier procedural flaws. *See, e.g., Benvenuto v. State*, 2007 UT 53, ¶ 31, 165 P.3d 1195; *State v. Parsons*, 781 P.2d 1275, 1278 (Utah 1989); *State v. Sery*, 758 P.2d 935, 937–40 (Utah Ct.App.1988). As we explained in *Parsons*, "The general rule applicable in criminal proceedings, and the cases are legion, is that by pleading guilty, the defendant is deemed to have admitted all of the essential elements of the crime charged and thereby waives all nonjurisdictional defects, including alleged pre-plea constitutional violations." 781 P.2d at 1278.

¶ 16 Ms. Rhinehart attempts to avoid falling prey to the general rule in two ways. First, she asserts that she did not enter a knowing and voluntary guilty plea and therefore could not have waived defects in the preliminary hearing and bindover. Next, she insists that even if her plea were lawful, it is not the preliminary hearing and bindover itself with which she takes issue, but rather with constitutional deprivations of her right to confront witnesses at the preliminary hearing. She argues that since those constitutional defects are jurisdictional and not subject to waiver, we must take up their merits. We disagree.

¶ 17 We may with dispatch dispose of Ms. Rhinehart's reinvocation of her challenge to the lawfulness of her plea. Put simply, she cannot achieve through a challenge to the bindover what she was foreclosed from doing by section 77–13–6—assail the lawfulness of her plea.

¶ 18 We turn, then, to Ms. Rhinehart's claim that she was deprived of constitutional rights in the preliminary hearing and that these transgressions stripped the court of jurisdiction. We note at the outset that the Utah Constitution expressly permits the waiver of a preliminary hearing "by the accused with the consent of the State." Utah Const. art. I, § 13. In light of this provision, it is difficult for us to conceive of why a constitutionally authorized waiver of a preliminary hearing would be foreclosed by the existence of defects, even constitutional defects, that occurred during the hearing. Of course, as Ms. Rhinehart properly notes, she never expressly waived her right to a preliminary hearing and, in fact, fought to exhaustion to prevail on her claims of preliminary hearing error. The fact that she put up a stern fight does not mean that she could not have surrendered and expressly waived her constitutional challenges by waiving her preliminary hearing. In our view, the entry of Ms. Rhinehart's guilty plea achieved the same waiver of her constitutional claims as a waiver of her preliminary hearing would have accomplished.

¶ 19 Finally, we find little merit in Ms. Rhinehart's claim that the alleged denial of her right to confront witnesses at the preliminary hearing implicated the subject matter jurisdiction of the court and was, therefore, immune from waiver. Without subject matter jurisdiction, a court is powerless to adjudicate a case. *See United States v. Cotton,* 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). Ms. Rhinehart directs us to *State v. Marshall,* an unpublished memorandum decision from our court of appeals, and its observation that "a preliminary hearing is essential to a court's jurisdiction over a felony." 2005 UT App 269U, para. 2, 2005 WL 1405321. We are, of course, not bound by decisions issued by our court of appeals. We take note, however, that nothing in the court of appeals' decision leads us to conclude that defects in a preliminary hearing strip a district court of subject matter jurisdiction, including the jurisdiction to assess the lawfulness of a preliminary hearing and bindover and to adjudicate waivers of defects in preliminary hearings and bindovers in the context of taking a guilty plea from an accused.

¶ 20 We have held that a district court is empowered to conduct a trial in the wake of an allegedly flawed bindover because a subsequent conviction beyond a reasonable doubt cures any bindover defect. *State v. Winfield,* 2006 UT 4, ¶ 26, 128 P.3d 1171. Ms. Rhinehart attempts to overcome this proposition with the contention that a guilty plea is not entitled to the same dignity as a "unanimous jury verdict reflecting proof beyond a reasonable doubt." It is not evident to us why a guilty plea is inferior to a jury verdict in this respect, but more importantly, this argument fails to address the central question of why a district court may exercise subject matter jurisdiction to conduct a trial after a defective bindover but not take a plea.

### III. MS. RHINEHART FAILED TO PRESERVE THE OTHER ISSUES FOR APPEAL

¶ 21 Ms. Rhinehart has asked us to take up the merits of her challenges to the manner in which the penalty phase of her proceeding was conducted and to the consti-

tutionality of Utah's life without parole statute. *See* Utah Code Ann. § 76–3–207(5) (2004). These issues were not preserved below. Because they were not, we will not consider them absent plain error or exceptional circumstances. *See State v. Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346. Considering this rule, defendants are best served by presenting unpreserved arguments to this court through the lens of one or all of these exceptions. Without more, the presentation of the merits of an issue cannot access an exception to the preservation doctrine. Not only has Ms. Rhinehart failed to persuade us that any of her unpreserved issues are eligible for either exception to the preservation rule, she has declined to present an argument to support the application of either exception to those issues. We accordingly decline to address their merits.

### CONCLUSION

¶ 22 Because Ms. Rhinehart failed to make a timely motion to withdraw her guilty plea as required by statute, we lack jurisdiction to consider the validity of her plea on appeal. Ms. Rhinehart's ineffective assistance of counsel claim cannot successfully evade this well-established jurisdictional bar. We further hold that Ms. Rhinehart waived the right to challenge the validity of her bindover when she entered a guilty plea. We decline to address the merits of Ms. Rhinehart's remaining unpreserved issues. Accordingly, we affirm the district court.

¶ 23 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice PARRISH concur in Justice NEHRING's opinion.