**2017 UT App 60**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
CRAIG DUNCAN NICHOLLS,
Appellant.

Opinion
No. 20140629-CA
Filed March 30, 2017

First District Court, Logan Department
The Honorable Kevin K. Allen
No. 031100637

Wayne K. Caldwell and Aaron K. Bergman,
Attorneys for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGE
GREGORY K. ORME and SENIOR JUDGE PAMELA T. GREENWOOD
concurred.[1]

ROTH, Judge:

¶1     Craig Duncan Nicholls filed a *Manning* motion in district
court seeking to reinstate the time to directly appeal the murder
conviction entered against him after a guilty plea. The court
determined that Nicholls had already exhausted his right to a
direct appeal and denied the motion, which he appeals. We
affirm.

---

1. Senior Judge Pamela T. Greenwood sat by special assignment
as authorized by law. *See generally* Utah R. Jud. Admin. 11-
201(6).

BACKGROUND

¶2     This case comes to us on a long and varied procedural history involving multiple appellate and postconviction proceedings. We first recount the general background before moving to the particular circumstances that led to this appeal.

*General Case History*

¶3     After consulting with his girlfriend, Nicholls agreed to kill her ex-husband. On a pretense, Nicholls lured the ex-husband to a construction site, shot him in the back and chest, hid the body in a storage room, and made off in the victim's car. Investigators quickly focused on Nicholls and his girlfriend and charged him with aggravated murder and with purchasing, transferring, possessing, or using a firearm by a restricted person. The State initially sought the death penalty.

¶4     Nicholls' trial counsel negotiated a plea agreement on his behalf. In exchange for his guilty plea, the State agreed to drop the firearm charge and to forgo the death penalty and instead seek life in prison without the possibility of parole. Nicholls agreed to the terms and pleaded guilty. After a plea colloquy in which Nicholls waived the waiting period for sentencing, the court accepted his guilty plea and immediately sentenced him to life in prison without the possibility of parole.

¶5     In the time since, Nicholls has sought to challenge aspects of his plea in a number of ways. First, he filed a pro se motion to withdraw the plea, which the district court denied as untimely, and thus jurisdictionally barred, because he had not filed the motion before sentencing as required by Utah law. Nicholls then filed a pro se appeal from the denial of his motion, but the appeal was dismissed after he failed to file a docketing statement. Second, Nicholls ostensibly sought to challenge his sentence in district court under Utah Rule of Criminal Procedure 22(e), which allows a court to correct an illegal sentence at any

time. The district court determined that it lacked subject matter jurisdiction and dismissed the rule 22(e) motion. Nicholls appealed and was appointed counsel for the appeal. The Utah Supreme Court affirmed the district court's dismissal in *State v. Nicholls* (*Nicholls I*), 2006 UT 76, 148 P.3d 990. In that case, the supreme court determined that the motion, although filed in the guise of a sentencing challenge under rule 22(e), was improper because the substance of the relief requested was "withdrawal of [Nicholls'] guilty plea due to lack of a knowing and voluntary waiver of rights." *Id.* ¶ 4. The court reiterated that rule 22(e) motions are not the proper vehicle to attack a guilty plea, *id.* ¶ 5, and noted that, having failed to move to withdraw his guilty plea before sentencing, Nicholls' only remaining avenue to challenge the plea itself was under the Post-Conviction Remedies Act (the PCRA), *id.* ¶¶ 6–7. Although not deciding the issue, the court noted "that Defendant may be entitled to counsel pursuant to [a provision of the PCRA]" in any future postconviction process. *Id.* ¶ 7.

¶6      Nicholls, acting pro se, subsequently challenged the guilty plea underlying his conviction by petitioning the district court for relief under the PCRA. On the State's motion, the district court dismissed the petition on the merits. Nicholls timely appealed to the supreme court, where he also represented himself, resulting in *Nicholls v. State* (*Nicholls II*), 2009 UT 12, 203 P.3d 976.

¶7      In *Nicholls II*, the court reached the merits of Nicholls' postconviction arguments, including one relevant here—namely, his contention that he received ineffective assistance of counsel during the plea phase of his criminal case. In support of his claim, Nicholls argued that "on the day of the plea hearing, I told [counsel] I wanted a trial," and that in response "counsel refused to consult with me or even acknowledge that I had any input." *Id.* ¶ 35. Nicholls also claimed that "counsel spent two hours making threats, demands, and bribes to force [him] to

accept the plea deal, and, eventually, [he] could no longer resist and capitulated to the plea." *Id.*

¶8     In assessing his claims, the supreme court focused on the record from Nicholls' underlying criminal case. The court determined that Nicholls' counsel advised him to accept a plea deal that avoided a potential death sentence and that, even if counsel put very little time into the case and only consulted with him twice as Nicholls asserted, such facts were not sufficient to show that his counsel performed deficiently. *Id.* ¶ 37. The supreme court also reviewed Nicholls' plea colloquy with the district court in detail. It highlighted the fact that, in response to four separate questions from the district court, Nicholls had essentially indicated that he was satisfied with the advice of his counsel and had not been compelled to enter a plea. *Id.* ¶ 39. The supreme court also concluded that, even if his counsel had been deficient, Nicholls had not met his burden of showing prejudice in his acceptance of a plea deal because he "pointed to no record evidence to show that he would have garnered a more favorable result had he not pled guilty." *Id.* ¶ 40. In sum, the supreme court affirmed the district court's dismissal of Nicholls' PCRA claims on the merits and in detail, concluding that Nicholls had not demonstrated ineffective assistance of counsel during the plea and sentencing phase of his criminal case. *Id.* ¶ 41.

*This Appeal*

¶9     After failing to convince the supreme court that his plea was constitutionally flawed, Nicholls returned to the district court with a motion to appoint counsel and reinstate his time for direct appeal under *Manning v. State*, 2005 UT 61, 122 P.3d 628. After several procedural and scheduling issues delayed resolution of the motion, the court appointed counsel for Nicholls and set a briefing schedule. The State's briefing deadline came and went without the State submitting a response. Although Nicholls' counsel took no action, Nicholls moved pro se to submit for decision on his pleading alone.

Along with his request to submit, Nicholls also moved to dismiss and replace counsel based on a potential conflict of interest that had been uncovered.

¶10    With the *Manning* motion still pending and submitted for decision, the State moved to enlarge its time to file a response, which the court granted the same day. The State then filed its opposition to the *Manning* motion, but Nicholls' appointed counsel never replied to the State's brief even though counsel timely requested and was granted extra time to do so. Nicholls, citing repeated but failed attempts to contact his counsel, submitted his motion for replacement counsel for decision. The court scheduled a second status conference and learned that Nicholls' existing counsel had stopped working on the case due to the unresolved conflict question. The court left the counsel issue open and indicated that it would proceed to decide the *Manning* motion on the record already before it.

¶11    In a written decision issued a few weeks later, the court determined that Nicholls had "exhausted his direct appeal rights" because he "gained access to the appellate system by filing his [first] Notice of Appeal." The court also concluded that, based on his failed rule 22(e) motion, "[Nicholls] has already had direct appellate review as it pertains to his attempt to withdraw his guilty plea." The court denied the *Manning* motion and denied the motion for appointment of new counsel as moot. Nicholls timely filed a notice of appeal, and we remanded for appointment of appellate counsel.

¶12    Now with counsel, Nicholls has submitted the case on briefs and oral argument. After the case was submitted, however, Nicholls moved this court for a stay pending a decision in a Utah Supreme Court case, *Gailey v. State*, 2016 UT 35, 379 P.3d 1278, which arose on a somewhat similar procedural posture and involved similar arguments. Like this case, *Gailey* involved an attack on the constitutionality of Utah's statutory requirement that any challenge to a guilty plea made after

sentencing is limited to proceedings under the PCRA. We granted the stay and both parties submitted supplemental briefing once the *Gailey* opinion issued.

ISSUES AND STANDARDS OF REVIEW

¶13　Nicholls contends that the district court erred when it denied his motion to reinstate the appeal period under *Manning v. State*, 2005 UT 61, 122 P.3d 628. In the *Manning* context, we review the district court's legal conclusions "for correctness but give deference to its underlying factual findings, meaning that we will not overturn them unless they are clearly erroneous." *State v. Kabor*, 2013 UT App 12, ¶ 8, 295 P.3d 193. Because the central question to be resolved here is whether Nicholls has a right of appeal that is subject to reinstatement, *see Manning*, 2005 UT 61, ¶ 31, we primarily focus on Nicholls' challenges to the constitutionality of Utah's statutory requirement that, once a defendant is sentenced, the defendant may challenge a guilty plea only under the PCRA. "The constitutionality of a statute is also a question of law reviewed for correctness." *Gailey v. State*, 2016 UT 35, ¶ 8, 379 P.3d 1278.

¶14　Nicholls also contends that the district court wrongly denied his motion to appoint counsel as moot. "We review the issue of mootness de novo, affording no discretion to the trial court." *Cox v. Cox*, 2012 UT App 225, ¶ 12, 285 P.3d 791.

ANALYSIS

¶15　In the proceeding below, Nicholls moved to reinstate the time to appeal his conviction under *Manning v. State*, 2005 UT 61, 122 P.3d 628. *Manning* explains that "a criminal defendant claiming denial of the right to appeal must file a motion in the trial court for reinstatement of a denied right to appeal." *Id.* ¶ 1. In support of his motion, Nicholls alleged that his trial counsel

performed ineffectively during the plea and sentencing phase of his case: "there was coercion"; "[he] was wrongfully advised"; and "[trial] counsel promised their assistance on the direct appeal, but after sentencing, went dark." According to Nicholls, he thus "raised a colorable *Manning* motion at least facially supported by the record," and the court should have held a hearing on the merits.

¶16    In denying Nicholls' motion, the district court determined that Nicholls had "exhausted his direct appeal rights." It also determined that Nicholls had "already had direct appellate review as it pertains to his attempt to withdraw his guilty plea" through the proceedings in *Nicholls II*, 2009 UT 12, 203 P.3d 976. Because the court concluded that Nicholls' *Manning* motion was meritless, it also dismissed Nicholls' pending motion for substitute counsel as moot.

¶17    On appeal, Nicholls argues two points. First, he maintains that he "should be permitted to move to withdraw the [guilty] plea." The thrust of the argument is that Utah Code section 77-13-6 (the Plea Withdrawal Statute) unconstitutionally deprived him of the right to appeal his conviction with the assistance of counsel.[2] Second, Nicholls argues that he is entitled to a "determination on the merits as to whether [he] was deprived of his right to a direct appeal of his sentence." He asserts that

---

2. In his opening brief, Nicholls asked this court to determine "whether strict adherence to [the Plea Withdrawal Statute] remains constitutional . . . where a defendant as a direct result of ineffective legal counsel enters a plea and [is immediately sentenced], thereby losing both the right to withdraw the plea, and the right to legal counsel." The supreme court's opinion in *Gailey v. State*, 2016 UT 35, 379 P.3d 1278, answered that question in the affirmative. In his supplemental briefing, Nicholls therefore refined the relief he requested, as we explain more fully below.

*Manning* grants him the ability to reinstate the time to appeal his sentence because he meets the criteria announced in that case. We conclude that the Plea Withdrawal Statute is constitutional as applied to Nicholls and we therefore lack jurisdiction to consider his plea withdrawal request. We also conclude that Nicholls has not met the burden required to reinstate the time to appeal his sentence.

## I. Nicholls' Request to Withdraw His Plea

¶18    Before addressing the merits of Nicholls' arguments, we first examine the legal framework at issue in this case, namely Utah's plea withdrawal and postconviction relief statutory schemes. The Utah Constitution provides that, in criminal prosecutions, the accused has "the right to appeal in all cases." Utah Const. art. I, § 12. The right to appeal is not unlimited, however, because "the appeal must be taken within such limitations and restrictions as to time and orderly procedure as the Legislature may prescribe." *Weaver v. Kimball*, 202 P. 9, 10 (Utah 1921).

¶19    One such restriction is that a defendant who pleads guilty waives "the right to a direct appeal of the conviction on the crime charged." *State v. Taufui*, 2015 UT App 118, ¶ 15, 350 P.3d 631 (citation and internal quotation marks omitted). That is because, "by pleading guilty, the defendant is deemed to have admitted all of the essential elements of the crime charged and thereby waives all nonjurisdictional defects, including alleged pre-plea constitutional violations." *State v. Rhinehart*, 2007 UT 61, ¶ 15, 167 P.3d 1046 (citation and internal quotation marks omitted). Thus, "[i]f a defendant wishes to challenge a guilty plea on direct appeal, he must first move to withdraw the plea." *State v. Coleman*, 2013 UT App 131, ¶ 3, 302 P.3d 860 (per curiam).

¶20    The Plea Withdrawal Statute mandates that a request to withdraw a guilty plea "shall be made by motion before

sentence is announced." Utah Code Ann. § 77-13-6(2)(b) (LexisNexis 2012); *see also id.* § 77-13-6(2)(a) (explaining that, to prevail on a motion to withdraw a plea, the defendant must make "a showing that [the plea] was not knowingly and voluntarily made"). If a defendant does not move to withdraw the plea, the only direct appeal available is the residual right to appeal the sentence. *Manning v. State*, 2005 UT 61, ¶ 37, 122 P.3d 628 ("Since [the defendant] could not appeal her conviction or the knowing and voluntary nature of her guilty plea, any remaining rights to appeal were necessarily limited to appealing her sentence."); *see also State v. Ott*, 2010 UT 1, ¶ 18, 247 P.3d 344 ("We have previously held that failure to withdraw a guilty plea within the time frame dictated by [the Plea Withdrawal Statute] deprives the trial court and appellate courts of jurisdiction to review the validity of the plea.").

¶21    This means that a defendant has only a finite window of time during which to seek plea withdrawal, and missing the window divests the defendant of the right to appeal anything but the sentence itself. *See Gailey v. State*, 2016 UT 35, ¶ 20, 379 P.3d 1278 ("We therefore reaffirm our prior caselaw holding that after sentencing is entered, a defendant may not file a motion to withdraw a guilty plea or directly appeal the plea, but must pursue postconviction relief through the PCRA . . . ."). The length of the withdrawal window is at least nominally controlled by Utah Rule of Criminal Procedure 22(a), which sets the "time for imposing sentence" at "not less than 2 nor more than 45 days" after entry of the plea. Rule 22 is not absolute however—a defendant may waive the minimum two-day waiting period and consent to be sentenced immediately. Utah R. Crim. P. 22(a) (allowing the court to modify the rule's sentencing time "with the concurrence of the defendant"). The natural consequence of a defendant's decision to waive the two-day minimum and be sentenced immediately is to extinguish the defendant's ability to move to withdraw the plea and, with it, the right to direct appeal of the plea itself.

¶22 This consequence to immediate sentencing is unquestionably constitutional under a long line of Utah Supreme Court cases, most recently *Gailey v. State*, 2016 UT 35. And the facts in that case are very similar to this one: Gailey, like Nicholls, concurrently "pled guilty, waived the waiting period for sentencing, and received judgment and sentence." *Id.* ¶ 1. On appeal, Gailey raised a facial challenge to the constitutionality of the Plea Withdrawal Statute, which "bars direct appeals once sentencing takes place, and requires defendants to pursue postconviction relief" under the PCRA. *Id.* ¶¶ 2–3. Gailey argued that "the statute is unconstitutional" because the Utah constitution provides that "'the accused shall have . . . the right to appeal in all cases,'" and the "PCRA remedy is not an adequate substitute for a direct appeal." *Id.* ¶ 2 (quoting Utah Const. art. I, § 12).

¶23 The supreme court upheld the Plea Withdrawal Statute, reasoning that it is constitutional because it "does not altogether foreclose the right to an appeal." *Id.* ¶ 3. Rather, the court explained, the statute simply "provides an alternative procedural route for challenging a plea" by directing defendants to file postsentencing claims under the PCRA. *Id.* In sum, the Plea Withdrawal Statute does not run afoul of an accused's "right to appeal in all cases," Utah Const. art. I, § 12, because it "simply dictates the procedural mechanism for pursuing a claim," *Gailey*, 2016 UT 35, ¶ 23. And *Gailey* follows in the path of other supreme court cases that have rejected challenges to the constitutionality of the Plea Withdrawal Statute based on equal protection, due process, and the right to assistance of counsel. *E.g.*, *State v. Rhinehart*, 2007 UT 61, ¶¶ 11, 14, 167 P.3d 1046 (rejecting a claim that the Plea Withdrawal Statute "unconstitutionally deprive[d] [the defendant] of her right to appeal" and holding that ineffective assistance of counsel claims "raised in the context of challenges to the lawfulness of guilty pleas are governed by [the Plea Withdrawal Statute]"); *State v. Merrill*, 2005 UT 34, ¶¶ 30, 47, 114 P.3d 585 (upholding the Plea

Withdrawal Statute under both due process and equal protection analyses). Thus, Utah's plea withdrawal and postconviction framework is uncontestably constitutional on its face. *See Gailey*, 2016 UT 35, ¶ 20. With that background, we now turn to Nicholls' specific arguments.

A.     Nicholls' Challenge

¶24     Nicholls asks us to determine whether the Plea Withdrawal Statute "[was] applied in a manner that [was] fundamentally and constitutionally fair." We understand Nicholls' argument to be an as-applied constitutional challenge. Indeed, Nicholls concedes that, unless an exception applies due to his atypical circumstances, neither this court nor the district court "have . . . jurisdiction to consider a direct appeal over [his] conviction." *See State v. Merrill*, 2005 UT 34, ¶ 17, 114 P.3d 585 (concluding that the Plea Withdrawal Statute "imposes a jurisdictional bar on late-filed motions to withdraw guilty pleas"). Therefore, Nicholls' appeal presents the question of whether his particular circumstances distinguish his case from the controlling law explained above, particularly *Gailey v. State*, 2016 UT 35, 379 P.3d 1278.

¶25     According to Nicholls, the distinction that sets him apart is the fact that, unlike the defendant in *Gailey*, he has already sought and been denied postconviction relief. Nicholls focuses on the fact that he was not represented by counsel during his PCRA proceeding, a factual circumstance that the *Gailey* court explicitly did not address. *Id.* ¶ 30 ("But unless and until Ms. Gailey is denied the effective assistance of counsel in the PCRA proceeding, her claim that it unconstitutionally denies her right to an appeal is not ripe.").

¶26     In essence, Nicholls' argument follows this path: He asserts that the ineffective assistance of his counsel during the plea stage of his case induced him not only to plead guilty, but also to immediately close the window for withdrawal of his plea.

Because his right to withdraw the plea was immediately extinguished and he could not appeal his conviction directly, Nicholls instead attacked his guilty plea under the PCRA as required by the Plea Withdrawal Statute. But because appellate counsel is guaranteed to criminal defendants, and he was not assisted by counsel during the PCRA process (which is considered a civil proceeding), Nicholls claims that his postconviction case did not satisfy the first right of appeal guaranteed to him by the Constitution.

¶27 Thus, Nicholls contends that the ineffective assistance he received at the plea stage also divested him of his right to the assistance of counsel on appeal because his appellate review consisted of a PCRA proceeding without appointed counsel. This result, claims Nicholls, violated his constitutional right to due process and, relatedly, the Sixth Amendment's guarantee of the assistance of appellate counsel. Accordingly, Nicholls asks us to "remand this matter for the trial court to determine, on the merits, whether an exception to [the Plea Withdrawal Statute] applies" and whether he "should be permitted to move to withdraw the [guilty] plea."

¶28 To resolve Nicholls' argument, we must determine whether the Plea Withdrawal Statute is constitutional as applied in his case. Only if the statute were unconstitutional in these circumstances would we need to address whether Nicholls may move to withdraw his plea.

B.    The Plea Withdrawal Statute

¶29 Nicholls argues that the Plea Withdrawal Statute, which requires that any challenge to a guilty plea made after sentencing be pursued in a postconviction process under the PCRA, is unconstitutional as applied. *See State v. Herrera*, 1999 UT 64, ¶ 4 n.2, 993 P.2d 854 ("An as-applied [constitutional] challenge . . . succeeds if the challenger shows that the statute was applied to him or her in an unconstitutional manner.").

Specifically, Nicholls asserts that the Plea Withdrawal Statute runs afoul of due process and the Sixth Amendment right to appellate counsel when, as happened here, "a defendant[,] as a direct result of ineffective legal counsel[,] enters a plea and [is immediately sentenced], thereby losing . . . the right to withdraw the plea."

¶30 Nicholls has not persuaded us that his circumstances set this case apart from other similarly situated defendants. His assertions throughout his legal proceedings have all been, in essence, no more than variations on a central theme—attempts to assail the validity of his guilty plea. Accordingly, his arguments have generally focused on the conduct of his trial counsel during the plea and sentencing phase of his case and, relatedly, the constitutional validity of his plea. At bottom, he has continually claimed that he received ineffective assistance of trial counsel at the plea stage of his case and therefore could not have knowingly and voluntarily waived his underlying constitutional rights. *E.g.*, *Nicholls II*, 2009 UT 12, ¶ 14, 203 P.3d 976 ("Nicholls claims that the district court erred in dismissing his PCRA petition because his plea was not knowing and voluntary . . . and that he received ineffective assistance of counsel."); *Nicholls I*, 2006 UT 76, ¶ 4, 148 P.3d 990 ("[T]he substance of the relief sought is the withdrawal of Defendant's guilty plea due to lack of a knowing and voluntary waiver of rights."). While Nicholls' current appeal takes a slightly different tack than his previous actions, his underlying complaint about the effectiveness of trial counsel has not changed.

¶31 In *State v. Rhinehart*, the supreme court addressed a similar challenge in an appeal brought by Nicholls' co-defendant. 2007 UT 61, 167 P.3d 1046. Rhinehart contended "that the ineffectiveness of her trial counsel caused her to enter her plea and to fail to bring a timely motion to withdraw it." *Id.* ¶ 11. As Nicholls does here, Rhinehart argued her counsel's deficient performance during the plea stage meant that "the requirement contained in [the Plea Withdrawal Statute] that she move to

withdraw her guilty plea as a condition to challenging her plea on direct appeal unconstitutionally deprive[d] her of her right to appeal." *Id.* That is, she argued that "it was her lawyer's fault that she entered her plea and failed to bring a timely motion to withdraw it." *Id.* ¶ 12. Thus, Rhinehart took the position that the Utah Constitution's guarantee of a right of appeal required "that defendants who seek leave to withdraw pleas based on claims of ineffective assistance of counsel [ought to be] free of the constraints of [the Plea Withdrawal Statute]" that normally force a defendant to move to withdraw a plea before challenging it. *Id.* ¶ 14.

¶32 Our supreme court rejected that argument. It concluded that Rhinehart's proposed distinction—between defendants who challenge a plea on ineffective assistance grounds versus those who challenge it for some other reason—was "a phantom classification." *Id.* The court reasoned that, "[a]s a practical matter, there is no alleged flaw in a guilty plea of a defendant represented by counsel that could not be attributed in some way to deficient representation." *Id.* ¶ 13. And concerned that recognizing such a distinction would result in an exception that swallowed the rule, the court held that ineffective assistance of counsel "can spare a defendant the consequences of her plea only if the defendant makes out the same case required of every defendant who seeks to withdraw a plea: that the plea was not knowing and voluntary." *Id.* The court concluded by holding that "claims of ineffective assistance of counsel raised in the context of challenges to the lawfulness of guilty pleas are governed by [the Plea Withdrawal Statute]" and thus are properly brought through postconviction proceedings under the PCRA. *Id.* ¶ 14.

¶33 In his briefing, Nicholls attempts to distinguish his situation from Rhinehart's by pointing out that she was sentenced over a month after entering her plea, while he was sentenced immediately. Thus, Nicholls asserts that Rhinehart had a window during which she could—but did not—move to

withdraw her plea, whereas Nicholls never even had the opportunity to consider it. But to the extent that such a distinction would have opened the door to Nicholls' current argument, the supreme court's decision in *Gailey v. State* closed it. 2016 UT 35, ¶ 11, 379 P.3d 1278. There, the supreme court reaffirmed "our precedent holding that the Plea Withdrawal Statute is a procedural bar to a direct appeal post-sentencing," even when a defendant enters a plea and is sentenced immediately. *Id.* Hence, Nicholls' procedural position is not legally distinguishable from *Rhinehart* and *Gailey*.

¶34 And those cases control our decision here. Under established Utah law, "the Plea Withdrawal Statute bars direct appeals once sentencing takes place," *id.* ¶ 3, even when a defendant raises "claims of ineffective assistance of counsel . . . in the context of challenges to the lawfulness of guilty pleas," *Rhinehart*, 2007 UT 61, ¶ 14. Instead of taking a direct appeal, the Plea Withdrawal Statute "requires defendants to pursue postconviction relief" under the PCRA. *Gailey*, 2016 UT 35, ¶ 3. Further, the Plea Withdrawal Statute is jurisdictional in nature. *State v. Ott*, 2010 UT 1, ¶ 18, 247 P.3d 344 ("We have previously held that failure to withdraw a guilty plea within the time frame dictated by [the Plea Withdrawal Statute] deprives the trial court and appellate courts of jurisdiction to review the validity of the plea."); *State v. Merrill*, 2005 UT 34, ¶ 17, 114 P.3d 585 (concluding that the Plea Withdrawal Statute "imposes a jurisdictional bar on late-filed motions to withdraw guilty pleas"). Our supreme court's precedent is clear and unequivocal: because Nicholls never moved to withdraw his plea and has already been sentenced, neither this court nor the district court have jurisdiction to consider Nicholls' challenge to his guilty plea in this case. Both courts are thus powerless to grant the relief that Nicholls seeks. As the supreme court concluded ten years ago, for Nicholls "[t]he Post-Conviction Remedies Act is thus the proper, and only, avenue for relief." *Nicholls I*, 2006 UT 76, ¶ 7, 148 P.3d 990.

C.     The PCRA

¶35    In his supplemental briefing, Nicholls essentially recognizes that the supreme court's decision in *Gailey v. State*, 2016 UT 35, 379 P.3d 1278, settled the main issue presented in his appeal, namely that the Plea Withdrawal Statute's jurisdictional bar to direct appeal is constitutional even when a defendant pleads guilty and is sentenced immediately. Instead of pursuing that argument, the supplemental brief changes tack somewhat; Nicholls now asks this court to create a new remedy "fashioned after the procedural mechanisms of [*Manning v. State*]" that applies to "very limited" circumstances like his, where a defendant was unrepresented during his or her PCRA proceeding.

¶36    The underlying premise of his supplemental argument is related to the argument we discussed above: although Nicholls was able to challenge the knowing and voluntary nature of his guilty plea in a civil postconviction proceeding under the PCRA, that proceeding was constitutionally insufficient because he did not have the assistance of counsel and instead represented himself. Based on the absence of counsel during the PCRA process, Nicholls argues that the PCRA proceeding did not satisfy his Sixth Amendment right to appellate counsel. To remedy that deprivation, Nicholls asserts that he is entitled to renew his challenge to his guilty plea through a direct appeal in his original criminal case, thus entitling him to the assistance of counsel and curing the Sixth Amendment problem.

¶37    To achieve that result, Nicholls asks us to fashion a new *Manning*-like remedy, which we will call for the purposes of this appeal a *Nicholls* motion. In his conceptualization, the *Nicholls* motion would be "a procedural mechanism to distinguish between those defendants who have truly waived the right to contest their plea" and those defendants who "were unconstitutionally deprived" of that right through ineffective assistance of counsel. Under this reasoning, a *Nicholls* motion

should be made available because the supreme court's opinion in *Gailey* specifically left open the question of whether an indigent defendant is entitled to appointed counsel in his PCRA claim when the PCRA stands in for the constitutionally-mandated first right of direct appeal. *See Gailey*, 2016 UT 35, ¶ 30 ("But unless and until Ms. Gailey is denied the effective assistance of counsel in the PCRA proceeding, her claim that it unconstitutionally denies her right to an appeal is not ripe.").

¶38  Nicholls opines that *Gailey* does not control his appeal because Nicholls, unlike the defendant in *Gailey*, has already had a PCRA proceeding without counsel, and therefore the issue that was not ripe for review in *Gailey* is ripe in his case. In Nicholls' view, Utah's statutory scheme—allowing a defendant to simultaneously plead guilty, be sentenced, and lose the right to direct appeal of the conviction—"automatically leads to the immediate loss of the constitutional, fundamental right to legal counsel and constitutional, fundamental right to a direct appeal of one's plea" in situations where ineffective assistance of counsel undermined the plea itself. Accordingly, Nicholls suggests that his proposed *Nicholls* motion can solve the problem because it

> is simple and intentionally limited in accordance with *Gailey v. State* to those instances where the PCRA has the most potential to *eviscerate* constitutional rights:
> 1. The defendant claims ineffective assistance of counsel in entering a plea *and* as a condition of the plea receives an immediate sentence.
> 2. The defendant has a right to legal counsel in the negotiation, acceptance, and entry of the plea, and
> 3. In exhausting the PCRA remedy, the defendant's request for legal counsel is not granted.

(Footnotes omitted.)

¶39 Nicholls' supplemental argument turns on the postconviction process that he already had under the PCRA, which culminated in *Nicholls II*, 2009 UT 12, 203 P.3d 976. In those proceedings, Nicholls apparently went unrepresented by counsel throughout. According to Nicholls, "[t]he remedy of civil litigation without legal counsel is simply, constitutionally, inadequate" as a substitute for direct appeal, the question left open in *Gailey*. We agree that Nicholls' broad point—defendants are entitled to representation on appeal—finds support in the law. "The Sixth Amendment right to counsel extends to a defendant's first appeal as of right. This right includes the right to state-paid counsel for indigent defendants." *Gailey*, 2016 UT 35, ¶ 26 (citing *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987)); *see also* Utah Code Ann. § 77-32-304(1)(b) (LexisNexis 2012) (mandating that an indigent's assigned counsel shall "file any first appeal of right or other remedy before or after conviction that the assigned counsel considers to be in the interest of justice").

¶40 The same is not true under the PCRA, however. "Neither the right to state-paid counsel nor the right to effective assistance of counsel is constitutionally or statutorily guaranteed in postconviction proceedings." *Gailey*, 2016 UT 35, ¶ 28. According to Nicholls, that is the crux of his case: because his only substantive appeal came in the form of a PCRA proceeding,[3] a proceeding that took place without the benefit of counsel, he is entitled to make another attack on his plea (this time, with the assistance of a lawyer).

---

3. Nicholls' non-PCRA direct appeal efforts were dismissed on jurisdictional grounds. *Nicholls I*, 2006 UT 76, ¶ 2, 148 P.3d 990 (affirming the district court's decision to dismiss Nicholls' plea challenge for lack of subject matter jurisdiction).

¶41   We agree with Nicholls that this issue went unresolved in *Gailey*. Indeed, part of the argument in *Gailey* rested on the fact that the PCRA does not require appointment of state-paid counsel to represent indigent defendants seeking postconviction review. Specifically, Gailey asserted "that the Plea Withdrawal Statute unconstitutionally infringe[d] on her right to an appeal because it mandate[d] review under the PCRA, where there is no guarantee of counsel." *Id.*; *see also* Utah Code Ann. § 78B-9-109(1) (LexisNexis 2012) (stating that "the court may, upon the request of an indigent petitioner, appoint counsel on a pro bono basis to represent the petitioner in the post-conviction court"). Gailey argued that the appointment provision in the PCRA runs afoul of the Sixth Amendment's guarantee of state-provided counsel on a defendant's first appeal of right because it permits the court to appoint counsel rather than requiring it to do so. *See Gailey*, 2016 UT 35, ¶¶ 26–28. As we have noted, however, the supreme court declined to reach the issue because Gailey had not yet sought relief under the PCRA; she therefore had not requested (and thus had not been denied) assistance of counsel in a PCRA action. *Id.* ¶ 23. Thus, the issue was not ripe for review and the court explicitly left the question of whether a given defendant is entitled to counsel in a PCRA action to be resolved in a future case. *Id.* ¶ 31.

¶42   Nicholls essentially makes the same argument here, except that he claims the issue is now ripe for review because he, unlike Gailey, has had a PCRA proceeding in which he requested but was not appointed counsel. While the combined procedural history of this case and Nicholls' PCRA case seems to implicate the constitutional question that *Gailey* left unresolved, we are not persuaded that his argument is reviewable by this court for two reasons.

¶43   First, we have already determined that, under the Plea Withdrawal Statute, Nicholls' failure to timely move to withdraw his plea divested this court of jurisdiction to review the plea in this case. Second, even if this court could entertain the

question presented, Nicholls' argument amounts to a collateral attack on the supreme court's decision in his previous PCRA case. Here, as in *Nicholls II*, Nicholls' claims are based on the allegation that he received ineffective assistance of counsel during the plea phase of his criminal case. The supreme court reached the merits of that argument and, after thoroughly analyzing his contentions regarding the poor quality of his representation, unanimously held "that Nicholls [had] failed to demonstrate that he received ineffective assistance of counsel." *Nicholls II*, 2009 UT 12, ¶ 41, 203 P.3d 976. Thus, the issue Nicholls raises in this appeal has already been resolved against him by a higher court.

¶44 For this court to grant Nicholls the relief he seeks—the right to directly appeal his guilty plea based on ineffective assistance of counsel—we would have to ignore the supreme court's clear holding in *Nicholls II*. We are not at liberty to do so. "The general rule of law is that a judgment may not be drawn in question in a collateral proceeding . . . ." *Olsen v. Board of Educ. of Granite School Dist.*, 571 P.2d 1336, 1338 (Utah 1977). "A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against." *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005); *accord Olsen*, 571 P.2d at 1338 ("Where a judgment is attacked in other ways than by proceedings in the original action to have it vacated or revised or modified . . . the attack is a 'Collateral Attack.'" (quoting Restatement (First) of Judgments § 11 (1942))).

¶45 *Nicholls II* was a separate postconviction proceeding under the PCRA; it did not arise as a direct appeal in the original criminal action. Although, by the nature of the PCRA, the operative facts and record in *Nicholls II* came from the underlying criminal case, the two cases were undoubtedly different: one was civil in nature, the other criminal. The State initiated the murder case by filing a criminal information, while

Nicholls instituted the postconviction case by filing a separate civil action. Importantly, the instant appeal arose from denial of a *Manning* motion filed in Nicholls' original criminal case, so this case is wholly distinct from the civil PCRA proceeding that resulted in *Nicholls II*. Because Nicholls asks for relief that would allow him to relitigate whether his trial counsel was ineffective, his argument "is an attempt to avoid the binding force of a judgment" rendered in a different case, *Nicholls II*. *See Browning*, 165 S.W.3d at 346. Put differently, the supreme court's decision in *Nicholls II* "currently stands as a bar against" the "specific relief" that Nicholls requests in this case. *See id.*

¶46 For these reasons, we conclude that the relief requested in Nicholls' supplemental briefing and the arguments supporting that relief are not properly before us because we lack jurisdiction to consider them on direct appeal. Even if they were properly before us, the arguments present an impermissible collateral attack on a prior judgment that our supreme court upheld in *Nicholls II*, because his arguments necessarily implicate the continuing validity of a final decision against him from a different case in a different forum on the same questions. Indeed, his relief does not stem from *Manning* or a direct appeal of his conviction at all. *See Gailey v. State*, 2016 UT 35, ¶ 20, 379 P.3d 1278 (reaffirming that, "after sentencing is entered, a defendant may not file a motion to withdraw a guilty plea or directly appeal the plea, but must pursue postconviction relief through the PCRA"). Rather, any potential challenge seems to be limited to a further proceeding under the PCRA, either by seeking to reopen *Nicholls II*—the proceeding that he now claims was constitutionally insufficient because he lacked the assistance of counsel—or by instituting a new postconviction proceeding based on the *Gailey* decision.[4]

---

4. Whether such an approach could be successful is a question we do not reach here. Nor do we consider whether other

(continued…)

¶47　In sum, the Plea Withdrawal Statute is constitutional on its face and as applied to Nicholls. Although the facts and procedural history of this case combined with Nicholls' PCRA case may implicate the constitutional question that *Gailey v. State* left unresolved, we cannot resolve the question here because we lack jurisdiction to consider it, and it is a collateral attack on *Nicholls II* in any event. We therefore decline to create a new *Nicholls* motion to allow Nicholls to challenge his guilty plea.[5]

## II. Nicholls' Request to Appeal His Sentence

¶48　Nicholls also argues that he is entitled to a "determination on the merits as to whether [he] was deprived of his right to a direct appeal of his sentence." This argument asserts that *Manning v. State*, 2005 UT 61, 122 P.3d 628, grants him the ability to reopen the time to appeal his sentence with the assistance of counsel because his situation satisfies the *Manning* criteria.

¶49　Although *Manning* is best known for allowing a defendant to reinstate the right to appeal a conviction that was lost through no fault of his own, the case itself involved a procedural circumstance like Nicholls', where a defendant sought to reinstate a right to appeal her guilty plea. While the

---

(…continued)
avenues of relief might be available, such as a petition for extraordinary relief. Those questions are not before us.

5. After the supreme court issued its decision in *Gailey v. State*, 2016 UT 35, 379 P.3d 1278, Nicholls moved to supplement the record on appeal with various materials, including the record from his PCRA case, *Nicholls II*, 2009 UT 12, 203 P.3d 976. We deferred ruling on the motion pending our consideration of the case. Because we have resolved Nicholls' appeal on grounds that do not implicate the materials he requested, we deny the motion as moot.

court determined that Manning had no right to appeal the plea because she had not timely moved to withdraw it, the court nevertheless held that a defendant retains the right to appeal his or her sentence even when he or she can no longer challenge the plea. *Id.* ¶ 37. To prevail on a *Manning* motion, a "defendant must demonstrate by a preponderance of evidence," *id.* ¶ 32 (internal quotation marks omitted), "that he has been unconstitutionally deprived, through no fault of his own, of his right to appeal," *id.* ¶ 31. Circumstances under which a defendant can prevail on a *Manning* claim include where:

> (1) the defendant asked his or her attorney to file an appeal but the attorney, after agreeing to file, failed to do so; (2) the defendant diligently but futilely attempted to appeal within the statutory time frame without fault on defendant's part; or (3) the court or the defendant's attorney failed to properly advise defendant of the right to appeal.

*Id.* (citations omitted).

¶50 According to Nicholls, he "meets all three" *Manning* criteria. However, while Nicholls analyzes the *Manning* criteria in his opening brief, he never states that his arguments are meant to resurrect the right to appeal his sentence. Rather, his arguments focus exclusively on his desire to reinstate his right to challenge his plea. Indeed, Nicholls' opening brief mentions his sentence as an object of appeal only in passing; he states in conclusion on the brief's last page that he "was deprived of his right to a direct appeal of his sentence." At no point in the argument section does Nicholls mention concerns about his sentence as a potential subject of the appeal he seeks to reinstate.

¶51 For instance, Nicholls argues that he "was terrorized and harassed into taking a plea that day." (Emphasis omitted.) He also argues that he "was wrongfully advised" when he "argued with [counsel] as to why [he] was taking a plea deal without a

trial." Even if we assume both allegations are true, these arguments pertain to trial counsel's performance before entry of Nicholls' plea and sentencing—they do not show that Nicholls was "unconstitutionally deprived, through no fault of his own, of his right to appeal" his sentence. *See id.* ¶ 31; *see also State v. Rhinehart*, 2007 UT 61, ¶ 15, 167 P.3d 1046 (explaining that, "by pleading guilty, the defendant is deemed to have admitted all of the essential elements of the crime charged and thereby waives all nonjurisdictional defects, including alleged pre-plea constitutional violations" (citation and internal quotation marks omitted)).[6]

¶52   Nicholls also alleges that "[trial] counsel promised their assistance on the direct appeal, but after sentencing, went dark." On its face, this allegation could broadly encompass *Manning* relief directed at a sentencing appeal. However, in support Nicholls points to his initial postconviction filing with the sentencing court, wherein he stated, "I was trying to dissuade my attorneys, telling them that I couldn't say what was in the DA' s prepared statement for me—they left saying they would change it. I had given no authority to make such a [plea] deal." Like his other arguments, it is clear from context that Nicholls' complaints—in his opening brief as elsewhere—revolve around his plea and resulting conviction, not his sentence.

¶53   In his reply brief, Nicholls attempts to bolster his argument by directly addressing his desire to appeal his sentence. However, "[i]t is well settled that issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered

---

6. On this point, as the supreme court noted in *Nicholls II*, "Nicholls was asked specifically about the quality of legal counsel he received" at least four times during the plea colloquy, and he "expressed satisfaction with his counsel" each time. 2009 UT 12, ¶ 39, 203 P.3d 976.

by the appellate court." *Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903 (citation and internal quotation marks omitted). And even if we set the briefing issue aside and assume that Nicholls has satisfied one of the *Manning* criterion with regard to appealing his sentence, he still must show prejudice. "Claims for reinstatement of the right to appeal [under *Manning*] are subject to harmless error review." *State v. Collins*, 2014 UT 61, ¶ 2, 342 P.3d 789. "To establish prejudice, all a defendant must show is that he would have appealed 'but for' the court's and his attorney's failure to properly inform him of the right to appeal." *Id.* ¶ 48.

¶54    Here, Nicholls has not demonstrated in any of his briefing that he would have appealed his *sentence* but for the alleged ineffective assistance of counsel he received, and he has thus not met his burden to show prejudice. We therefore conclude that, assuming an error occurred at all, it was harmless, "and a harmless error does not require reversal." *See Proctor v. Costco Wholesale Corp.*, 2013 UT App 226, ¶ 9, 311 P.3d 564. We affirm the district court's dismissal of Nicholls' *Manning* motion, and we therefore do not address Nicholls' argument that the district court erred by not appointing replacement counsel in the proceedings below.

CONCLUSION

¶55    In sum, we conclude that the Plea Withdrawal Statute was constitutional as applied to Nicholls. Although he has raised colorable claims about the process he received in his civil postconviction proceeding under the PCRA, those claims are not properly before this court in this appeal and must be addressed through an alternative mechanism. We also conclude that Nicholls did not meet his burden to show that he is entitled to reinstate the time to appeal his sentence. Affirmed.

———————