**2020 UT App 126**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ROMEO ALYSS ALVAREZ,
Appellant.

Opinion
No. 20190289-CA
Filed September 3, 2020

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 171900249

Brett J. DelPorto, Attorney for Appellant

Sean D. Reyes and Kris C. Leonard, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGES
GREGORY K. ORME and DIANA HAGEN concurred.

HARRIS, Judge:

¶1      Romeo Alyss Alvarez shot and killed a person from whom he had been attempting to purchase a video game console. After being charged with various crimes, including aggravated murder, Alvarez eventually pled guilty to felony murder, aggravated robbery, and aggravated assault. He now appeals, taking issue with the district court's failure to further inquire into his stated dissatisfaction with his appointed attorney and with the court's denial of a motion to continue his sentencing. He also asserts that his appointed attorney rendered ineffective assistance. Because we determine that, under Utah's plea withdrawal statute, we have no jurisdiction to consider Alvarez's claims on direct appeal, we dismiss Alvarez's appeal.

BACKGROUND

¶2      Around Christmas, an individual (Seller) advertised a PlayStation 4 video game console for sale in an online marketplace.[1] After Alvarez expressed interest in purchasing the item, the two agreed to meet one morning at a street intersection to complete the transaction. Alvarez and a friend (Friend) arrived to make the purchase and found Seller, along with a passenger (Passenger), waiting in Seller's car. Alvarez and Friend then got in the car and asked Seller to drive them to a different location so that Alvarez could get the money he needed for the purchase, and Seller obliged.

¶3      Upon arriving at the second location, Alvarez drew a gun and told Seller and Passenger to "turn over everything they had." Seller turned and attempted to grab the gun from Alvarez, and the two struggled over it. During the course of the struggle, the gun fired twice, and both shots struck Seller at close range: one shot hit him in his forearm, and the other in his chest. Meanwhile, Friend dragged Passenger out of the vehicle and began hitting her with brass knuckles and kicking her; after shooting Seller, Alvarez pointed the gun at Passenger and told her to stay down. A concerned citizen (Witness) drove by and asked if anyone needed help, but Alvarez pointed the gun at Witness, who then drove away and called 911.

---

1. There is some indication in the record that Alvarez was attempting to buy drugs from Seller, either in addition to or instead of a video game console. In his brief, Alvarez goes so far as to assert—without support in the relatively scant record—that "Playstation" is "a code word for drugs." Ultimately, however, it does not matter for purposes of this appeal whether Alvarez intended to purchase a video game console, drugs, or both.

¶4      After that, Alvarez and Friend took property from Seller's car and fled the scene on foot. The police arrived shortly thereafter, and attempted to aid Seller, but he ultimately died from the gunshot wound to his chest. Police then followed footprints and a trail of blood for some distance where they located a discarded PlayStation 4 box, splattered with what appeared to be blood. They also located Alvarez's wallet in the back seat of Seller's car. Police were able to locate Alvarez later that day and take him into custody.

¶5      After Alvarez was arrested, the State charged him with one count of aggravated murder, one count of aggravated robbery, one count of felony discharge of a firearm, two counts of aggravated assault, and one count of obstruction of justice. Alvarez was assigned a public defender (Appointed Counsel), who, after reviewing the discovery provided by the State, began to explore the possibility of a plea agreement.

¶6      About a week before the plea agreement was formalized, Alvarez explained to the court at a scheduling hearing that he was dissatisfied with, and would like to fire, Appointed Counsel because Alvarez did not "have confidence in him." Without asking any follow-up questions, the court told Alvarez that it would not appoint substitute counsel at that time, explaining that his right to representation did not guarantee him the counsel of his choice and that he was free to fire Appointed Counsel if he wished, but without a demonstrable conflict, he was not entitled to a new public defender. Alvarez did not articulate any actual conflict with Appointed Counsel, and the hearing ended without Alvarez firing Appointed Counsel or the court appointing substitute counsel.

¶7      After that hearing, Alvarez and his family hired a private attorney to "look[] through the discovery" and "g[i]ve them an opinion" about whether the plea arrangement offered by the State was a fair deal under the circumstances. This second

attorney told Alvarez and his family that, in the attorney's opinion, the plea arrangement was a good one for Alvarez, because the "best case scenario" for Alvarez at trial, given the evidence the State planned to present, would be for the jury to convict him only of the crimes to which he would plead guilty under the proposed plea arrangement and nothing more.

¶8     One week after the scheduling hearing, and after receiving the second attorney's opinion, Alvarez appeared again in court and this time he entered into a plea agreement with the State. Under the terms of the deal, Alvarez pled guilty to felony murder (rather than aggravated murder), aggravated robbery, and one count of aggravated assault. In exchange, the State dropped the three remaining charges (felony discharge of a firearm, obstruction of justice, and an additional count of aggravated assault). Both in writing—in the written plea agreement—and orally in open court, Alvarez stated that he was entering into the arrangement freely and voluntarily, and that he was "satisfied with the advice and assistance" of Appointed Counsel. The court also advised Alvarez that he may be able to withdraw his plea, but only prior to sentencing. The court then scheduled a sentencing hearing.

¶9     A couple of weeks before the scheduled sentencing hearing, a third attorney (Retained Counsel) filed a "Notice of Limited Appearance" on Alvarez's behalf. In that notice, Retained Counsel specified that he was "not replacing" Appointed Counsel as Alvarez's counsel of record. A few days later, Retained Counsel—but not Appointed Counsel—filed a written Motion to Continue Sentencing, noting that Alvarez was only eighteen years old, and that Retained Counsel had just been retained and needed time "to review the massive discovery" in the case and "investigate the case before sentencing," all with an eye toward examining "whether there may be grounds to move to withdraw" Alvarez's plea. Both the State and Seller's family opposed the motion, noting the logistical difficulties that would

be visited upon members of Seller's family—who had traveled to Utah from California for the sentencing hearing—if the hearing were to be continued. After reviewing the filings, the district court issued a written order, entered three days prior to the scheduled sentencing hearing, denying Retained Counsel's motion to continue.

¶10    Three days later, Retained Counsel appeared at the sentencing hearing, in addition to Appointed Counsel, and orally renewed his motion to continue the hearing. Appointed Counsel did not join in that motion. In support of the motion, Retained Counsel again stated that he needed time to review the discovery and to inform Alvarez and his family about whether the plea deal was "the absolute best plea that they could get," and whether there existed grounds to withdraw the plea. He also noted that there had been "a conflict between" Alvarez and Appointed Counsel, an issue that might "go to the issue of the voluntariness of the plea," and he specifically made note of an allegation that Appointed Counsel had raised the specter of the death penalty with Alvarez during discussions about the plea deal. Retained Counsel offered his view that "[t]his isn't a death penalty case," and that Alvarez might have been coerced into accepting the deal because of a concern about the death penalty.

¶11    In response, the district court inquired of Retained Counsel whether he was making a motion to withdraw the plea, and Retained Counsel made clear that he was not, and that he could not do so at that time because he was not sure that he had grounds to do so; indeed, he acknowledged that his investigation might well demonstrate that Appointed Counsel "did a great job" and that the plea arrangement was "the best plea" that Alvarez could get. After considering argument from all counsel, the district court orally denied Retained Counsel's motion to reconsider the court's previous denial of the motion to continue, noting in particular that Alvarez had already obtained a second opinion about the plea agreement, and that he was not

entitled to a continuance in order to obtain a third. A few days later, the district court followed up its oral ruling with a written order memorializing that ruling.

¶12    After the court made its oral ruling denying the motion to continue, Retained Counsel asked to withdraw from his limited representation, which motion the court granted. Appointed Counsel then sought and obtained a short recess in order to confer with Alvarez. After the recess, Appointed Counsel asked the court for the benefit of the record regarding Alvarez's intentions for withdrawing his plea. Counsel stated that, during the recess, he had asked Alvarez "if he wanted to make a verbal motion to withdraw the plea." Appointed Counsel told Alvarez that counsel "did not see or have any grounds to withdraw the plea," but told Alvarez that "if [Alvarez] wanted to articulate those grounds that he has not articulated to [Appointed Counsel], he could make that motion today before sentencing." Counsel then told the court that, while Alvarez would like to "put . . . off" the sentencing, Alvarez had decided not to make a motion to withdraw his plea, and had decided to "move forward with sentencing." The court then addressed Alvarez directly, and asked him whether he wished to make a motion to withdraw his plea, and Alvarez answered that he did not, and that he was making that decision freely and voluntarily.

¶13    The court then proceeded with the sentencing hearing, and ultimately sentenced Alvarez to a prison sentence of fifteen years to life on the felony murder charge; five years to life on the aggravated robbery charge, and zero to five years on the aggravated assault charge, with the sentences to run concurrently to each other. About six weeks after his sentencing, Alvarez sent the court a motion, in the form of a handwritten letter, asking to withdraw his plea. The court denied the motion orally at a subsequent hearing, explaining that, post-sentencing, Alvarez no longer had a right to withdraw his plea, a proposition with which Appointed Counsel agreed.

ISSUES AND STANDARD OF REVIEW

¶14 Alvarez now appeals, and raises three issues for our review. First, he asserts that the district court erred when it failed to inquire further into the concerns that led him to request substitute counsel. Second, he argues that the district court abused its discretion when it denied Retained Counsel's motion to continue. And third, he asserts that Appointed Counsel rendered ineffective assistance. In response, the State contends that, under Utah's plea withdrawal statute, we lack jurisdiction in this direct appeal to reach the merits of any of the issues Alvarez raises. Because we agree with the State's position, we need list here only one standard of review: "whether appellate jurisdiction exists is a question of law which we decide in the first instance." *State v. Arghittu*, 2015 UT App 22, ¶ 12, 343 P.3d 709 (quotation simplified).

ANALYSIS

¶15 Under Utah's constitution, a criminal defendant generally has "the right to appeal in all cases." *See* Utah Const. art. I, § 12. But this constitutional right to appeal is "not unlimited," and is subject to "such limitations and restrictions as to time and orderly procedure as the Legislature may prescribe." *State v. Nicholls*, 2017 UT App 60, ¶ 18, 397 P.3d 709 (quoting *Weaver v. Kimball*, 202 P. 9, 10 (Utah 1921) (quotation simplified)).

¶16 One such restriction manifests itself when a defendant chooses to plead guilty instead of proceeding to trial. In such cases, the defendant by pleading guilty "waives the right to a direct appeal of the conviction on the crime charged." *Id.* ¶ 19 (quotation simplified). This occurs because, when a defendant pleads guilty, he "is deemed to have admitted all of the essential elements of the crime charged and thereby waives all nonjurisdictional defects, including alleged pre-plea

constitutional violations." *See State v. Rhinehart*, 2007 UT 61, ¶ 15, 167 P.3d 1046 (quotation simplified).

¶17 A defendant who has entered into an unconditional[2] guilty plea and who wishes to challenge, on direct appeal, anything other than the sentence imposed must comply with the strictures of section 77-13-6 of the Utah Code (the Plea Withdrawal Statute). *See Nicholls*, 2017 UT App 60, ¶ 20. That statute provides that a defendant may withdraw a guilty plea "only upon leave of the court and a showing that [the plea] was not knowingly and voluntarily made." Utah Code Ann. § 77-13-6(2)(a) (LexisNexis 2017). The statute also provides that a defendant's request to withdraw his plea must "be made by motion before sentence is announced," and that "[a]ny challenge to a guilty plea not made" prior to sentencing may be pursued only in a post-conviction proceeding. *Id.* § 77-13-6(2)(b)–(c). Thus, "if a defendant wishes to challenge a guilty plea on direct appeal" rather than in a post-conviction proceeding, "he must first move to withdraw the plea" prior to imposition of sentence. *See Nicholls*, 2017 UT App 60, ¶ 19 (quotation simplified).

¶18 Our supreme court has explained that this provision of the Plea Withdrawal Statute functions both as a "rule of preservation" and a "jurisdictional bar" to certain claims a

---

2. Under rule 11(j) of the Utah Rules of Criminal Procedure, a defendant may, with "approval of the court and the consent of the prosecution," enter a "conditional plea" whereunder he reserves the right to appeal "the adverse determination of any specified pre-trial motion," and may "withdraw the plea" if his appeal is successful. Utah R. Crim. P. 11(j); *see also State v. Sery*, 758 P.2d 935, 938–40 (Utah Ct. App. 1988), *disagreed with on other grounds by State v. Pena*, 869 P.2d 932 (Utah 1994). When Alvarez entered his plea, he did not invoke rule 11(j), and he makes no argument on appeal that his plea was conditional.

defendant may wish to make on direct appeal. *State v. Allgier*, 2017 UT 84, ¶ 26, 416 P.3d 546. In this way, the Plea Withdrawal Statute imposes "a strict sanction" on a defendant who fails to make a timely motion to withdraw his guilty plea, because in that situation even the traditionally available exceptions to our common-law preservation doctrine—plain error and ineffective assistance of counsel—are unavailable to a defendant on direct appeal if his claims concern the propriety of his guilty plea. *See State v. Rettig*, 2017 UT 83, ¶ 34, 416 P.3d 520.

¶19 The Plea Withdrawal Statute's jurisdictional bar is broad, and extends not just to appeals from a defendant's post-sentence attempts to withdraw or challenge the plea itself, but also to appeals relating to claims regarding "any proceeding that led to" the plea. *State v. Scott*, 2017 UT App 103, ¶ 7, 400 P.3d 1172. Indeed, when a defendant fails to timely move "to withdraw his plea, we lack jurisdiction to consider any challenge not directed at the sentence he received." *Id.* ¶ 8 (quotation simplified). Accordingly, a defendant's "failure to seek to withdraw a guilty plea creates a bar that prohibits this court from reviewing on direct appeal the plea itself or any proceeding that led to it." *Id.* ¶ 7. Thus, "[i]f a defendant does not move to withdraw the plea, the only direct appeal available is the residual right to appeal the sentence." *Nicholls*, 2017 UT App 60, ¶ 20.

¶20 The State contends that, under the Plea Withdrawal Statute, we lack jurisdiction to reach the merits of any of Alvarez's claims on direct appeal, because those claims concern the propriety of his plea, and Alvarez declined to make a motion to withdraw that plea prior to imposition of sentence. "Whether subject matter jurisdiction exists is a threshold issue that [an appellate court] must resolve before we may address the appellant's substantive issues," *In re K.F.*, 2009 UT 4, ¶ 21, 201 P.3d 985, because if we lack jurisdiction over an appellant's claims, "we are powerless to address" his "arguments on appeal," *Scott*, 2017 UT App 103, ¶ 8. Accordingly, we begin by

addressing the State's jurisdictional concern, and because we ultimately agree with the State on this point, the jurisdictional inquiry is both the beginning and end of our analysis.

¶21    Each of Alvarez's three claims on appeal comes within the ambit of the Plea Withdrawal Statute's jurisdictional bar. His first claim is that the district court failed to adequately inquire into the basis for his asserted dissatisfaction with Appointed Counsel. *See State v. Pursifell*, 746 P.2d 270, 273 (Utah Ct. App. 1987) (stating that, when an indigent defendant expresses dissatisfaction with appointed counsel, "the court must make some reasonable, non-suggestive efforts to determine the nature of the defendant's complaints and to apprise itself of the facts necessary to determine whether the defendant's relationship with his or her appointed attorney has deteriorated to the point that sound discretion requires substitution"). As Alvarez and Retained Counsel articulated it to the district court, Alvarez's dissatisfaction stemmed from an allegation that Appointed Counsel, in discussing the potential plea agreement with Alvarez, raised the specter of the death penalty and indicated that, if Alvarez went to trial, there was some possibility that he could be convicted and executed. Thus, the conflict Alvarez hints at has everything to do with concerns about the propriety of Alvarez's guilty plea; indeed, Retained Counsel acknowledged, at the sentencing hearing, that this issue "go[es] to . . . the voluntariness of the plea" and that the remedy at this point, if an impropriety were found, would be the withdrawal of Alvarez's plea. Accordingly, because the issues Alvarez identifies concern the propriety of his plea and have nothing to do with his sentence, and because Alvarez did not file a timely motion seeking withdrawal of that plea, the Plea Withdrawal Statute bars our consideration of Alvarez's first claim on direct appeal.

¶22    Alvarez's second claim is that the district court abused its discretion by not continuing the sentencing hearing to allow Retained Counsel additional time to investigate the propriety of

Alvarez's guilty plea. This is a challenge ultimately aimed at Alvarez's plea and conviction, and not a challenge aimed at the sentence imposed upon Alvarez at the sentencing hearing. The underlying issue that Retained Counsel wanted extra time to investigate was the propriety of Alvarez's plea, with the goal of eventually filing a motion to withdraw the plea, if supported after the investigation was complete. Yet Alvarez chose to go forward with sentencing, without making a motion to withdraw his plea, even after the district court had denied his motion to continue, and even after the court asked him directly if he wanted to make such a motion.

¶23 In this respect, this case is different from *State v. Ferretti*, 2011 UT App 321, 263 P.3d 553. In *Ferretti*, the defendant appeared at his sentencing hearing and made an oral motion to withdraw his plea, and then sought a postponement of the sentencing to allow him to file a written version of his motion to withdraw, supported with additional analysis. *Id*. ¶ 7. The district court demanded, as a condition for granting additional time, that the defendant "articulate a good faith basis for withdrawing his plea," and when the defendant could not do so, the court denied the request for additional time, denied the oral motion to withdraw the plea, and proceeded with sentencing. *Id.* ¶ 8. The defendant appealed, and we reversed, holding that "the district court exceeded its permitted discretion when it failed to continue [the defendant's] sentencing to allow for adequate briefing in support of his plea-withdrawal request." *Id.* ¶ 16.

¶24 The clear difference between *Ferretti* and this case is that, in *Ferretti*, the defendant made a motion to withdraw his plea prior to imposition of sentence, thus satisfying the strictures of the Plea Withdrawal Statute. In this case, by contrast, Alvarez expressly declined to do so, both personally and through counsel, and even after the district court asked him directly if that is what he wished to do. Where a defendant brings a timely motion to withdraw the plea, that defendant is entitled to

challenge, on direct appeal, the court's resolution of that motion, including the procedures afforded the defendant in resolving that motion. *See id.* ¶¶ 11–16; *see also State v. Badikyan*, 2018 UT App 168, ¶¶ 23–28, 436 P.3d 256 (allowing direct appeal regarding the procedures afforded at the hearing on the timely-filed plea withdrawal motion), *aff'd*, 2020 UT 3, 459 P.3d 967. But where no such motion is timely made, any objections to the procedures afforded the defendant prior to sentencing may not be the subject of direct appeal, unless the challenge goes to the sentence rather than to the conviction. *See Nicholls*, 2017 UT App 60, ¶ 20 (stating that, "[i]f a defendant does not move to withdraw the plea, the only direct appeal available is the residual right to appeal the sentence"); *see also Scott*, 2017 UT App 103, ¶ 7 (stating that a defendant's "failure to seek to withdraw a guilty plea creates a bar that prohibits this court from reviewing on direct appeal the plea itself or any proceeding that led to it"). Here, Alvarez made no timely motion to withdraw his plea, and his second challenge concerns his conviction and not his sentence; accordingly, under the Plea Withdrawal Statute and applicable case law, we have no jurisdiction to review this challenge on direct appeal.

¶25    Alvarez's final claim is that Appointed Counsel rendered ineffective assistance in two respects: first, by "failing to ensure" that Alvarez's request for substitute counsel "was properly addressed" and second, by declining to join Retained Counsel's motion to postpone sentencing. As noted above, however, even claims for ineffective assistance of counsel—which are usually exempted from preservation requirements—are subject to the strictures of the Plea Withdrawal Statute. *See Rettig*, 2017 UT 83, ¶ 34 (stating that the Plea Withdrawal Statute "imposes a strict sanction of waiver that is not subject to any common-law exceptions"). And these claims of ineffective assistance concern themselves directly with whether Alvarez's plea and conviction were proper, not his sentence.

¶26  We have recently held that a claim for ineffective assistance of counsel that concerned the propriety of a guilty plea and that was not raised in the first instance with the district court prior to sentencing could not, under the Plea Withdrawal Statute, be brought to us on direct appeal. *See State v. Harper*, 2020 UT App 84, ¶¶ 12–15, 466 P.3d 744. This is exactly the situation presented here. Alvarez asks us to consider a claim of ineffective assistance, which claim was never presented to the district court, and which claim concerns the propriety of his plea. As we held in *Harper*, such a claim is barred by the Plea Withdrawal Statute from our consideration on direct appeal.[3]

CONCLUSION

¶27  Alvarez brings no challenge to the propriety of his sentence. All of Alvarez's claims, at root, challenge the propriety of his guilty plea. Yet he made no timely motion to withdraw his guilty plea, even though he specifically retained two attorneys to examine the propriety of his plea, and even though the district court asked him directly if he wanted to make such a motion. Under these circumstances, the Plea Withdrawal Statute prevents Alvarez from bringing, on direct appeal, the three claims he asks us to review. Accordingly, we lack jurisdiction to review Alvarez's claims, and therefore dismiss his appeal.

---

3. Alvarez also filed a motion, pursuant to rule 23B of the Utah Rules of Appellate Procedure, seeking to supplement the record to support his claim of ineffective assistance of counsel. Because we conclude that we are jurisdictionally barred from considering the merits of that claim in this direct appeal, we deny the rule 23B motion as moot.